[Crim. No. 44497. Second Dist., Div. Six. Nov. 5, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JESS RIVERA, JR., Defendant and Appellant.

COUNSEL

Quin Denvir and Frank O. Bell, Jr., State Public Defenders, under appointment by the Court of Appeal, and James A. Uyeda, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Andrew D. Amerson and Ernest Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

STONE, P. J.—Jess Rivera, Jr., appeals his conviction of burglary (Pen. Code, § 459[1]) after jury trial and the seven-year prison term imposed therefor (two-year base term plus five years consecutive for an admitted prior conviction of assault with intent to commit rape (§ 667, subd. (a)). We affirm the judgment of conviction and the sentence.

At approximately 9:20 p.m. on December 26, 1982, one of the residents of an apartment complex in Port Hueneme heard a "commotion upstairs" and told John Martinez, a visitor of another resident, his cousin. Martinez went upstairs to investigate. On the way, he saw a "shadow" move toward the apartment's carport area and then go over a fence. The "shadow" was dressed in dark blue pants, a dark blue jacket and black shoes.

As Martinez returned to his cousin's apartment, he noticed that the door to Dennis Delfo's apartment was ajar. Martinez knew that Delfo was out of the state and concluded that someone had broken into Delfo's apartment. The "shadow" had disappeared.

Martinez attracted the attention of two police officers, who began a search of the complex. One officer saw appellant run from the area near Delfo's apartment toward the carport; both officers gave chase.

Appellant moved in a low crouch through the carport and then ducked down by a car. At the point where he ducked, the officers recovered the items taken from Delfo's apartment. Appellant was wearing dark blue corduroy pants, a blue bathrobe and gloves. The officer testified that appellant exhibited no outward appearance of intoxication.

The kitchen window of Delfo's apartment had been broken; the officer testified that the window was the point of entry. Outside the window, in the soft dirt, the officer noticed a pattern of straight parallel lines and opined that they appeared to be impressions left by someone kneeling in corduroy pants.

Appellant was arrested, waived his rights, and told the officers that he ducked down behind the car because he had some marijuana and was afraid to be caught with it. He said he stashed the marijuana under the tire of the car behind which he ducked. Appellant gave varying accounts of the extent of his intoxication, claiming that he could not remember a lot of what had occurred earlier in the evening. He did explain however that he was wearing

---

[1]All statutory references herein are to the Penal Code unless otherwise noted.

gloves because he had taken out some messy garbage: two shopping bags containing wet tamale husks and Christmas wrappings.

No marijuana was found under the tire of the car behind which appellant ducked; no tamale husks or Christmas wrappings were found in the garbage dumpster.

At trial, appellant denied entering Delfo's apartment or taking anything therefrom. He testified that, although he had been drinking beer and had smoked marijuana, he "wasn't stumbling to where [he] didn't know [his] actions." He also stated that even though he might have told the officers he was "blown away on weed," that did not mean that he did not know what was happening. He explained that he ducked to avoid the police because he was on parole and that discovery of the marijuana could have resulted in his return to prison.

## I. INSTRUCTIONS REGARDING VOLUNTARY INTOXICATION

■ Appellant contends that his conviction must be reversed because the jury was instructed first that they should consider his state of intoxication in determining whether he formed the requisite specific intent for the crime of burglary (CALJIC No. 4.21 (1981 rev.)) and then, in the next sentence, that voluntary intoxication was no defense and would not relieve him of responsibility for the crime (CALJIC No. 4.20 (4th ed. 1979)).

■ We agree that CALJIC No. 4.20 should not be given in cases which involve specific intent crimes. (*People* v. *Spencer* (1963) 60 Cal.2d 64, 87 [31 Cal.Rptr. 782, 383 P.2d 134].) However, whether the giving of the instruction confuses the jury depends upon the manner and context in which it is given.

Where the court instructs the jury that the *general rule* is that voluntary intoxication is no defense to a crime and then explains that there is an *exception* to that general rule which applies to specific intent crimes, there is no danger of confusion. (See, e.g., *People* v. *Kozel* (1982) 133 Cal.App.3d 507 [184 Cal.Rptr. 208]; *People* v. *Yoder* (1979) 100 Cal.App.3d 333 [161 Cal.Rptr. 35]; *People* v. *Patterson* (1979) 88 Cal.App.3d 742 [152 Cal.Rptr. 183]; *People* v. *Asher* (1969) 273 Cal.App.2d 876 [78 Cal.Rptr. 885]; *People* v. *Conley* (1968) 268 Cal.App.2d 47 [73 Cal.Rptr. 673].) ■ In this case, however, the jury was *not* informed that CALJIC No. 4.21 explained an exception to CALJIC No. 4.20. In the absence of that explanation, we think the giving of two such contradictory instructions constitutes error. (See, e.g., *People* v. *Hood* (1969) 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370]; *People* v. *Spencer*

(1963) 60 Cal.2d 64 [31 Cal.Rptr. 782, 383 P.2d 134]; *People* v. *Ford* (1963) 60 Cal.2d 772 [36 Cal.Rptr. 620, 388 P.2d 892].)

However, we fail to see in what manner this error could have prejudiced appellant. He denied entering Delfo's apartment and/or taking any items therefrom. Appellant suggests that his pretrial statements to the officers regarding the extent of his intoxication could have been utilized by counsel to argue that appellant entered the apartment after it had been broken into by someone else and that his intoxication accounted for his failure to remember the entry and also accounted for the unorthodox nature of the items which were taken (a bible, a book and an article on The Shroud of Turin; an old jewelry box containing backgammon pieces and a portable typewriter). However, appellant's own testimony at trial was that he was not so intoxicated that he did not know and/or could not remember what he was doing on the night in question. Accordingly, the error is harmless. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## II. The Admission of the Prior Felony Conviction

██ Appellant next argues that his conviction must be reversed because of the "admission of an irrelevant prior felony conviction to impeach" him. The record reveals that the prior conviction was not *admitted* for the purpose of impeaching appellant. His own counsel stipulated that the fact of the prior conviction (but not the nature of the offense) could be introduced so that appellant, *on direct examination,* could explain that he was on parole and that that was the reason he attempted to avoid the police. However, despite the reason for its admission, appellant's prior conviction was *used* to impeach him: the jury was instructed that they could consider the prior conviction for the purpose of determining appellant's credibility. (CALJIC Nos. 2.20 (4th ed. 1982 pocket pt.) pp. 6-7, and 2.23 (4th ed. 1979).)

██ It is not necessary to address appellant's constitutional arguments because there was no objection to the instructions regarding credibility. "Normally, a defendant is held to waive the right to appeal alleged errors by failing to make an appropriate objection in the trial court; however, an appellate court may review any instruction given even though no objection was made in the lower court if the substantial rights of the defendant are affected. (Pen. Code, §§ 1259, 1469.) The cases equate 'substantial rights' with reversible error, i.e., did the error result in a miscarriage of justice? (Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)" (*People* v. *Arredondo* (1975) 52 Cal.App.3d 973, 978 [125 Cal.Rptr. 419].)

██ In this case, even if the instructions were erroneous, we could not find a miscarriage of justice. This was not a close case. The evidence point-

ed unerringly to appellant as the perpetrator and contradicted appellant's uncorroborated explanation of his activities. Any alleged error was harmless. (*People* v. *Watson, supra,* 46 Cal.2d at p. 836.)

## III. "Burglary of a Residence"

■ Appellant argues that the consecutive five-year enhancement was illegally imposed because his *present* conviction was not for a "serious felony."[2] His argument goes something like this: (a) He was convicted of second degree burglary. (b) Section 460 provides that burglary of a residence is first degree burglary and that all other burglaries are second degree. Therefore, his second degree burglary conviction cannot be a "serious felony" because sections 667 and 1192.7, subdivision (c), require conviction of "burglary of a residence." (c) The trial court cannot look behind the "least adjudicated elements" of the conviction to determine whether defendant burgled a residence.

We find fault with each stage of this analysis:

### a. *Appellant's "Second Degree" Burglary Conviction*:

Appellant was tried by jury on an information which alleged that he entered an "inhabited dwelling house and apartment . . . with the intent to commit larceny . . . in the nighttime." The jury found appellant "guilty of a violation of section 459 . . . as alleged in the information." For some inexplicable reason, the jury did not expressly find the degree of the crime. Accordingly, appellant received the benefit of section 1157 which mandates that, in the absence of a jury determination regarding degree, "the degree of the crime . . . of which the defendant is guilty . . . shall be deemed to be of the lesser degree."

There can be no question here that in order to find appellant guilty, the jury must have found that he burgled a residence; that was the only offense charged. This conclusion does not violate the rule, as appellant contends, that there can be no implied finding of the degree of a crime when the trier of fact fails to specifically do so (*People* v. *Thomas* (1978) 84 Cal.App.3d

---

[2]"Any person convicted of a *serious felony* who previously has been convicted of a *serious felony* . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction . . . . The terms of the present offense and each enhancement shall run consecutively." (§ 667, subd. (a).) Appellant's *prior* conviction was for assault with intent to commit rape. He does not question that that offense constitutes a serious felony within the meaning of section 667, subdivision (a) and 1192.7, subdivision (c). He admitted this conviction prior to trial and it is in no way an issue on the sentencing arguments raised on appeal.

281 [148 Cal.Rptr. 532]) because we are not dealing here with an implied finding of the degree of a crime; we are concerned with the *implied finding of a fact,* i.e., that it was a *residence,* as opposed to some other structure, which appellant entered with the intent to steal.

b. *Section 460:*

Appellant argues that because section 460 provides that burglaries of residences are first degree and all other burglaries are second degree, and because he was convicted of second degree burglary, he cannot have been convicted of burglary of a residence. He relies on similar reasoning in *People* v. *Lee* (1984) 150 Cal.App.3d 455 [197 Cal.Rptr. 766], where the court concluded that, where the prosecution stipulated that defendant was charged with second degree burglary, a finding of guilt by the trial court after submission of the matter on the preliminary hearing transcript precluded enhancement of defendant's sentence pursuant to section 667, subdivision (a), because the "least adjudicated elements" of second degree burglary do not include burglary of a residence.

We think that the degree of appellant's *present* conviction is not determinative of whether that present burglary involved a residence. In the first place, effective January 1, 1983, all burglaries of residences are first degree pursuant to section 460. However, prior to January 1, 1983, and at the time of appellant's offense, burglary of the second degree could involve a residence.[3]

Secondly, this analysis requires that we adopt the "least adjudicated elements" test recently affirmed, in a different factual situation, by the California Supreme Court in *People* v. *Crowson* (1983) 33 Cal.3d 623 [190 Cal.Rptr. 165, 660 P.2d 389]. We do not think that that theory applies in the determination of whether the *present* conviction involves the "burglary of a residence." Accordingly we explain our disagreement with the First District's opinion in *People* v. *Lee* (1984) 150 Cal.App.3d 455 [197 Cal.Rptr. 766].

c. *The Least Adjudicated Elements Approach:*

At the outset, we stress that the question involved in this case is whether appellant's *present* offense constitutes a "serious felony," to wit, the "burglary of a residence." (§§ 667, subd. (a), 1192.7, subd. (c).) There is no

---

[3]Prior to January 1, 1983, section 460 provided that: "Every burglary of an inhabited dwelling house or trailer coach as defined by the Vehicle Code, or the inhabited portion of any other building committed in the nighttime is burglary of the first degree. . . . all other kinds of burglary are of the second degree." Accordingly, a daytime burglary of a residence could be second degree under the statute prior to its amendment. The *Lee* court does not analyze this change in the statute; however, it may be that the stipulation that defendant was charged with second degree burglary also involved a stipulation that the present section would be applicable.

question that his *prior* offense (assault with intent to commit rape, § 220) does constitute a "serious felony." (§ 1192.7, subd. (c).)

There is currently a great deal of uncertainty in the law about the depth to which courts can investigate to determine whether a *prior* conviction on a plea of guilty to a charge of burglary constitutes a conviction for "burglary of a residence" within the meaning of these sections.[4] Thankfully, that is not the issue here.

In this case, appellant was charged with and the jury found him guilty of burglary. The structure alleged in the information, to which all of the evidence at trial referred, and into which the jury found that appellant entered with larcenous intent, was a residence. Unlike a prior conviction, the determination of whether the *present* conviction involved a residence " 'does not [involve] the opening or reopening of questions calling for resolution on the basis of the testimony of witnesses who may have died or disappeared or where memories have faded.' " (*Crowson, supra,* 33 Cal.3d at p. 633 quoting *In re Finley* (1968) 68 Cal.2d 389, 392-393 [66 Cal.Rptr. 733, 438 P.2d 381].)

All the court need do is look at the evidence and the verdict in the matter presently before it to determine whether section 667 is applicable. To hold that the court must close its eyes to that evidence and verdict would be not only logically unsound but would fly in the face of the obvious purpose of the voters who enacted the prior serious felony enhancement provisions of Proposition 8. (*People* v. *Smith* (1983) 34 Cal.3d 251, 258 [193 Cal.Rptr. 692, 667 P.2d 149].)

## IV. The Double the Base Term Limitation

Appellant's final argument is that the court erred in failing to stay that portion of his sentence which exceeds four years because of the "double-the-base term" limitation set forth in section 1170.1, subdivision (g). That subdivision provides, generally, that the "term of imprisonment shall not exceed twice the number of years imposed by the trial court as the base term . . . ." We find that section 667 creates an additional exception to this "double-the-base term" limitation.[5]

---

[4]The California Supreme Court has granted hearing in all of the following published, and other unpublished, cases which concern this issue: *People* v. *Jackson* (Cal.App.) March 29, 1984 (Crim. 23622); *People* v. *O'Bryan\** (Cal.App.) March 29, 1984 (Crim. 23621); *People* v. *Johnson* (Cal.App.) May 17, 1984 (Crim. 23712); *People* v. *Nunley* (Cal.App.) July 12, 1984 (Crim. 23837); *People* v. *Rome* (Cal.App.) September 13, 1984 (Crim. 23980).

[5]This issue is also presently pending before the California Supreme Court. Hearing has been granted in *People* v. *Rome* (Cal.App.) September 13, 1984 (Crim. 23980) and *People* v. *Nunley* (Cal.App.) July 12, 1984 (Crim. 23837).

---

\*Reporter's Note: For Supreme Court opinion see 37 Cal.3d 841 [210 Cal.Rptr. 450, 694 P.2d 135].

Section 667 was enacted as part of the initiative measure known as Proposition 8 which took effect on June 9, 1982. The section mandates a five-year consecutive enhancement for prior "serious felonies":[6] "Any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively." (§ 667, subd. (a).)

Subdivision (b) of section 667 continues: "This section shall not be applied when the punishment imposed under other provisions of law would result in a longer term of imprisonment. There is no requirement of prior incarceration or commitment for this section to apply."

Lest there be any doubt that the intent of the initiative was to increase, as much as possible, sentences for "serious felony" repeat offenders, the proposition also included an addition to the California Constitution. "Any prior felony conviction of any person in any criminal proceeding . . . shall subsequently be used *without limitation* for purposes of impeachment or enhancement of sentence in any criminal proceeding . . . ." (Art. I, § 28, subd. (f), italics added.)

In our view these provisions of Proposition 8 unambiguously modify the provisions of subdivision (g) of section 1170.1. That section must now be read with an additional constitutionally mandated exception: "The term of imprisonment shall not exceed twice the number of years imposed by the trial court as the base term pursuant to subdivision (b) of section 1170 unless the defendant stands convicted of a 'violent felony' as defined in subdivision (c) of section 667.5, or a consecutive sentence is being imposed pursuant to subdivision (c) of this section, or an enhancement is imposed pursuant to section 12022, 12022.5, 12022.6 or 12022.7 [*or an enhancement is imposed pursuant to sections 667 and 1192.7 for a prior serious felony conviction,*] or the defendant stands convicted of felony escape from an institution in which he is lawfully confined." (Italics added.)

This interpretation does not mean, as appellant suggests, that the initiative repealed section 1170.1, subdivision (g), by implication. It means merely

---

[6]"Serious felonies" are defined in section 1192.7, subdivision (c), also added by the initiative. Assault with intent to commit rape, the prior felony involved here, and burglary of a residence, appellant's present offense, are "serious felonies."

that the initiative created an additional exception to section 1170.1, subdivision (g).[7]

We are also unpersuaded by the argument that the purpose of the addition of article I, section 28 to the Constitution was to allow the court to "use" section 667 to *impose* five-year sentences for enhancements but, at the same time, to require the court to *stay execution* of those enhancements to the extent that they cause the total sentence to exceed the double-the-base-term limitation of section 1170.1, subdivision (g). That is not consistent with the analysis of the proposition which was presented to the voters in the ballot pamphlet prepared for the June 1982 election. ". . . This measure includes two provisions that would increase prison sentences for persons convicted of specified felonies. First, upon a second or subsequent conviction for one of these felonies, the defendant could receive, on top of his or her sentence, an *additional* five-year prison term for each such prior conviction, regardless of the sentence imposed for the prior conviction. This provision would not apply in cases where other provisions of law would result in even longer prison terms. Second, any prior felony conviction could be used without limitation in calculating longer prison terms. . . ." (Ballot Pamp., Proposed Initiative Stats. & Amend. to Cal. Const. with arguments to voters, Primary Elec. (June 8, 1982) Analysis by Legislative Analyst, pp. 54-55, original italics.)

Our conclusion that section 667 created an additional exception to the "double-the-base-term" limitation of section 1170.1, subdivision (g) is therefore consistent with legislative purpose and intent. (*People* v. *Smith, supra,* 34 Cal.3d 251, 258.)

V. CONCLUSION

The judgment is affirmed.

Abbe, J., and Gilbert, J., concurred.

A petition for a rehearing was denied December 3, 1984, and appellant's petition for a hearing by the Supreme Court was denied February 14, 1985.

---

[7]Accordingly, we disagree with *People* v. *Whigam* (1984) 158 Cal.App.3d 1161 [205 Cal.Rptr. 227].