[Crim. No. 15944. Fourth Dist., Div. One. May 21, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANCIS J. POOLE, Defendant and Appellant.

518

**COUNSEL**

Louis N. Hiken, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John W. Carney and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COWETT, J.**\*—This appeal follows a conviction and sentence on a guilty plea. Defendant Francis Poole contends his case must be remanded for re-sentencing because:

(1) *Arbuckle* error was committed and he has the right to be resentenced by the judge who accepted his plea, or, in the alternative, he be allowed to withdraw his plea; and

(2) The sentencing judge prejudicially failed to apply the "double-the-base term" limit, denied him Penal Code section 2933 credits and was ambiguous as to the manner in which he intended to impose consecutive sentences.

## FACTS

A complaint charged Poole as follows: counts I through V, inclusive, robbery (Pen. Code, § 211)[1] and count VI, attempted robbery (§§ 664, 211). The complaint also alleged three prior prison terms within the meaning of section 667.5, subdivision (b).

On January 24, 1984, following a plea bargain, Poole pleaded guilty to counts I, II, III, V and VI, and admitted the first two prior prison term

---

\*Assigned by the Chairperson of the Judicial Council.

[1]All statutory references are to the Penal Code unless otherwise specified.

allegations. Count IV was dismissed and the third prior prison term allegation was stricken.

The colloquy between Poole and the court at the time the plea was accepted included the following:

"THE COURT: All right. I think you have understood the plea bargain.

"Do you agree to be sentenced by any judge of this court, Mr. Poole? I'm not going to be here when you come back for sentencing.

"A. Yes.

"Q. You do."

On February 28, 1984, Poole was sentenced to prison for a term of eight years. His sentence was computed as follows: the middle base term of three years was imposed as to count I; one year was imposed on each of counts II, III and V, each of these to be consecutive to count I and to each other; this term to be enhanced by two years pursuant to section 667.5, subdivision (b); sentence as to count VI to be served concurrently to count I.

The record is silent as to any discussion at the time of the plea (or any other time) of Poole having the right to a bifurcated trial on the validity of his prior convictions.

We conclude (1) there was no *Arbuckle* error in this case; (2) section 2933 does not apply, and to so find does not violate Poole's equal protection rights; (3) the slight or apparent ambiguity concerning the manner of consecutive sentencing here does not require remand for resentencing;[2] and (4) the "double-the-base term" limit does not apply to Poole's sentence.

DISCUSSION

I

In *People* v. *Arbuckle* (1978) 22 Cal.3d 749 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171], the California Supreme Court first artic-

---

[2]Further, we conclude no *sua sponte* advisal concerning the right to a bifurcated trial on the issue of the validity of prior convictions is by any authority required at the time of accepting a guilty plea nor before or at the time of sentencing following a guilty plea. (See *People* v. *Bracamonte* (1981) 119 Cal.App.3d 644 [174 Cal.Rptr. 191].)

ulated the rule a defendant has a right to be sentenced by the same judge who accepts his guilty plea. The right created thereby is neither constitutional nor statutory, but is "a hybrid, judicially promulgated contractual right . . . ." (*In re Thomas S.* (1981) 124 Cal.App.3d 934, 939 [177 Cal.Rptr. 742]; see *In re Ray O.* (1979) 97 Cal.App.3d 136 [158 Cal.Rptr. 550] [*Arbuckle* applicable to juvenile proceedings].)

The court in *Arbuckle* explained the right it recognized as applying in every case where the judge accepts a plea bargain *and retains* sentencing discretion under the agreement because an implied term of the bargain is that sentence will be imposed by that judge whose sentencing propensities are an inherently significant factor in the defendant's decision to enter a guilty plea. The court contemplated if internal court administrative procedures render it impossible for the defendant to be sentenced by the same judge who accepts his plea, then the defendant can choose to proceed with sentencing before a different judge, or withdraw his plea.

As with other rights, a defendant may waive his *Arbuckle* rights. A valid waiver of any right, however, presupposes an actual and demonstrable knowledge of the right being waived so that the waiver is deemed knowing and intelligent. Courts should not find a waiver by mere silence or acquiescence even when the defendant is represented by counsel. (*In re Thomas S., supra,* 124 Cal.App.3d 934.) Since *Arbuckle* rights are not constitutional rights (such as the privilege against self-incrimination, the right to a trial by jury, and the right to confront witnesses) which must be expressly waived, it is a right which may be waived by conduct. ". . . [F]airness dictates that before accepting silence or acquiescence in sentencing by a different judge as a waiver, the court must satisfy itself from the record that defendant knew he had the right to be sentenced by the same judge who took his plea. The court cannot reasonably assume or speculate that the defendant had the requisite knowledge of his *Arbuckle* rights even if represented by an attorney." (*People* v. *Rosaia* (1984) 157 Cal.App.3d 832, 840 [203 Cal.Rptr. 856].)

The recent case of *People* v. *Rosaia, supra,* 157 Cal.App.3d 832, is particularly instructive as to the appropriate standard of review of the facts in this case concerning an *Arbuckle* waiver: "The preferable way to assure that the record reflects defendant's knowledge of his *Arbuckle* rights is for the judge who takes the plea to advise the defendant of those rights at the time he takes the plea. However, we recognize that advisement of those rights may effectively occur at some later stage of the proceeding and that courts of different size and organization may adopt more practical and less onerous means of assuring that defendant knows of his *Arbuckle* rights. Moreover, statements or requests on the record by defendant or his counsel

may import such knowledge and make formal advisement by the court unnecessary. These considerations, among others, prompt us to refrain from stating specific requirements for advice to defendants of their *Arbuckle* rights. We believe the rights of the defendant are adequately protected and onerous duties avoided by requiring only that the *record* demonstrate the defendant's knowledge of his *Arbuckle* rights to support a conclusion that defendant waived those rights by his conduct. Such a requirement is consistent with general judicial reluctance to find a waiver by silence or acquiescence. (See *People* v. *Mancheno* (1982) 32 Cal.3d 855 [187 Cal.Rptr. 441, 654 P.2d 211] [no waiver of right to diagnostic study under plea bargain by failure to state any reason why sentence should not be pronounced].)'' (*People* v. *Rosaia, supra,* 157 Cal.App.3d at p. 840.)

Here, the record supports a reasonable inference Poole knew he had the right to be sentenced by the judge who accepted his plea and Poole expressly agreed to be sentenced by another judge. We so hold because the express agreement to be sentenced by another judge in and of itself reasonably gives rise to the inference that Poole was informed he had a right to be sentenced by the same judge who took the plea. A defendant reasonably should know he would not be asked if he agrees to be sentenced by *a different* judge, to which the response is either yes or no, unless he had the right to say no and insist on being sentenced by the *same* judge. This is not a case where the record demonstrates mere silence or acquiescence in a different judge sentencing a defendant. Further, a judge retains no sentencing discretion when he certifies or sends the case to another judge for sentencing. (*People* v. *Miskiewicz* (1984) 158 Cal.App.3d 820, 825-826 [204 Cal.Rptr. 873].) Poole was not denied his *Arbuckle* rights.

## II

Poole contends the "double-the-base term" limitations on the total length of a sentence as provided by section 1170.1, subdivision (g)[3] survive enactment of article I, section 28, subdivision (f) of the California Constitution and apply to limit his total sentence to a maximum of six years (rather than the eight years imposed). Relying on *People* v. *Whigam* (1984) 158 Cal.App.3d 1161 [205 Cal.Rptr. 227] we held the "double-the-base term" limit did apply to Poole's sentence requiring a remand for resentencing. We must now decide whether the *Whigam* holding survives in light of the California Supreme Court's recent decision, *People* v. *Jackson* (1985) 37 Cal.3d 826 [210 Cal.Rptr. 623, 694 P.2d 736].

---

[3]Section 1170.1, subdivision (g) reads: "The term of imprisonment shall not exceed twice the number of years imposed by the trial court as the base term . . . ."

In *Jackson,* the Supreme Court held although section 1170.1, subdivision (g) survives, it must be read as if it contained an exception for enhancements for prior serious felonies pursuant to section 667. (*Id.,* at p. 838.) The issue here is whether section 1170.1, subdivision (g) should be read as if it also contains an exception for enhancements for any felony for which a prior separate prison term was served pursuant to section 667.5, subdivision (b).[4]

Poole asserts the holding of *Jackson* should be read as abrogating the double-the-base term limits for enhancements based on prior serious felonies only. He argues the focus of Proposition 8 was upon increasing sentences for serious felony repeat offenders only and the voters intended no change by Proposition 8 regarding enhancements based on other prior felonies because the limitations on these enhancements were already an accepted part of the determinate sentencing scheme. However, as pointed out in *People* v. *Rivera* (1984) 162 Cal.App.3d 141, 151-152 [207 Cal.Rptr. 756], the analysis of the proposition as presented to the voters in the ballot pamphlet prepared for the June 1982 election informed voters of two purposes: "This measure includes two provisions that would increase prison sentences for persons convicted of specified felonies. First, upon a second or subsequent conviction for one of these felonies, the defendant could receive, on top of his or her sentence, an *additional* five-year prison term for each such prior conviction, regardless of the sentence imposed for the prior conviction. . . . Second, any prior felony conviction could be used without limitation in calculating longer prison terms." (Ballot Pamp., Proposed Initiative Stats. & Amend. to Cal. Const. with arguments to voters, Primary Elec. (June 8, 1982), analysis by Legislative Analyst, pp. 54-55, original italics.)

The Attorney General argues this court should find enhancements pursuant to section 667.5, subdivision (b) to be another exception to the double-the-base term limit because the rationale of *Jackson* and *Rivera* lead logically to this conclusion.

Both *Jackson* and *Rivera* remind us the broad language of article I, section 28, subdivision (f) of the California Constitution provides: "(f) *Use of Prior Convictions.* Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used[5] without limitation[6] for purposes of . . . enhancement of sentence . . . ."

---

[4]*Whigam* held section 1170.1, subdivision (g) should not be read to contain exceptions for enhancements under either section 667 or section 667.5, subdivision (b).

[5]We agree with *People* v. *Rivera, supra,* 162 Cal.App.3d 141 that the term "use" does not mean impose but stay execution. (*Id.,* at p. 151.)

[6]Poole agrees the *Jackson* court did not specifically hold the "without limitation" language was designed solely to reinforce newly enacted section 667.

Thus, *Jackson* and *Rivera* emphasize that section 667, an enhancement statute, must be given its full, unabridged meaning so as not to render such enactments meaningless in whole or part and so as to give due effect to the statute's intended purpose. *Jackson* recognized that Proposition 8, as a result of a draftsman's oversight, failed to make all appropriate amendments to section 1170.1, subdivision (g) comparable to the failure to amend subdivision (f). (*People v. Jackson, supra*, 37 Cal.3d at p. 838, fn.. 15.) *Jackson* then concludes despite the uncertain meaning of article I, section 28, subdivision (f), section 667 must have been intended to be unlimited by section 1170.1, subdivision (g) in order to effectuate unfettered use of section 667 for enhancement purposes. (*Id.*, at p. 838.)

Because specific statutory language prevails over general language and because constitutional provisions prevail over conflicting legislative provisions (13 Cal.Jur.3d, Const. Law, § 27, pp. 63-64), we read section 1170.1, subdivision (g) as if it contained an exception for enhancements pursuant to section 667.5, subdivision (b) comparable to the exception now recognized pursuant to section 667.[7]

III

Poole spent 53 days in actual presentence confinement in county jail. He was unable to post bail. The sentencing court gave Poole the proper number of good-time credits under section 4019 for the time he spent in county jail. Poole received no credits under section 2933. Poole contends that had he been able to post bail and thereafter serve all of his term in state prison he would have been entitled to reduce the entire period of confinement by 50 percent, by obtaining work credits under section 2933, rather than the less generous one-third reduction for good behavior for the first 53 days of confinement under section 4019. He claims the interpretation of section 2933 as being inapplicable to him unconstitutionally denies him equal protection of law.

We must first decide which of two standards to apply when addressing Poole's equal protection argument, either the strict scrutiny standard or the traditional (and lower) "rationability" test[8] (*In re Monigold* (1983) 139 Cal.App.3d 485 [188 Cal.Rptr. 698]).

Effective January 1, 1983, the Legislature substantially revised the statutory scheme for sentence reductions (see Stats. 1982, ch. 1234), amending

---

[7]We, therefore, disapprove our holding on this point in *People v. Whigam, supra*, which predated *People v. Rivera* and *People v. Jackson, supra*.

[8]As Justice Kaus has put it, the first issue is whether "we go first class or tourist." (*Alex T. v. Superior Court* (1977) 72 Cal.App.3d 24, 28 [140 Cal.Rptr. 17].)

sections 2930, 2931, 2932 and 4019, and adding sections 2933, 2934, and 2935. Section 2933[9] now provides a prisoner with the opportunity to cut his sentence in half by participating in authorized work programs. Section 4019[10] allows for only a one-third reduction for work performance and good behavior in the county jail pending trial.

We apply the strict scrutiny test in analyzing this issue because the additional loss of liberty which is possible in this situation requires it. (See *People* v. *Olivas* (1976) 17 Cal.3d 236, 243 [131 Cal.Rptr. 55, 551 P.2d 375]; contra *In re Bender* (1983) 149 Cal.App.3d 380 [196 Cal.Rptr. 801].) In so doing, we conclude the challenged differential treatment is warranted because of the administrative impracticality of providing section 2933 credit programs before sentencing. We find the state has a compelling interest in

---

[9]Section 2933 provides in part: "(a) It is the intent of the Legislature that persons convicted of crime and sentenced to state prison, under Section 1170, serve the entire sentence imposed by the court, except for a reduction in the time served in the custody of the Director of Corrections for performance in work, training or education programs established by the Director of Corrections. Worktime credits shall apply for performance in work assignments and performance in elementary, high school, or vocational education programs. Enrollment in a two- or four-year college program leading to a degree shall result in the application of time credits equal to that provided in Section 2931. *For every six months of full-time performance in a credit qualifying program, as designated by the director, a prisoner shall be awarded worktime credit reductions from his term of confinement of six months. A lesser amount of credit based on this ratio shall be awarded for any lesser period of continuous performance.* Less than maximum credit should be awarded pursuant to regulations adopted by the director for prisoners not assigned to a full-time credit qualifying program. Every prisoner who refuses to accept a full-time credit qualifying assignment or who is denied the opportunity to earn worktime credits pursuant to subdivision (a) of Section 2932 shall be awarded no worktime credit reduction. Every prisoner who voluntarily accepts a half-time credit qualifying assignment in lieu of a full-time assignment shall be awarded worktime credit reductions from his term of confinement of three months for each six-month period of continued performance. . . ." (Italics added.)

[10]Section 4019 provides in part: "(a) The provisions of this section shall apply in all of the following cases:

" . . . . . . . . . . . . . . . . . . . .

"(4) When a prisoner is confined in a county jail, . . . following arrest and prior to the imposition of sentence for a felony conviction.

"(b) Subject to the provisions of subdivision (d), for each six-day period in which a prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has refused to satisfactorily perform labor as assigned by the sheriff, . . .

"(c) For each six-day period in which a prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has not satisfactorily complied with the reasonable rules and regulations established by the sheriff, . . .

" . . . . . . . . . . . . . . . . . . . .

"(f) It is the intent of the Legislature that *if all days are earned under this section, a term of six days will be deemed to have been served for every four days spent in actual custody.*" (Italics added.)

rehabilitating prisoners. Section 2933 credits are an inducement to prisoners to enter work, training and/or educational programs designed to prepare them for a rehabilitated reentry into society when released from prison. Clearly, custody credits are a strong incentive for voluntary participation, especially following conviction and sentencing. Although we find the distinctions drawn by the law are not theoretically necessary to further the cited compelling state interest, the administrative impracticality of providing such programs before sentencing establishes the inevitable ineffectiveness of such programs in accomplishing the underlying state interest in rehabilitation.[11] Under these circumstances, we hold the limited availability of section 2933 credits to postsentence imprisonment only is constitutionally valid.[12] (Accord *People* v. *Caruso* (1984) 161 Cal.App.3d 13 [207 Cal.Rptr. 221]; *People* v. *Rosaia, supra,* 157 Cal.App.3d at p. 848; *People* v. *Caddick* (1984) 160 Cal.App.3d 46, 50-53 [206 Cal.Rptr. 454].)

---

[11]To serve their rehabilitative purpose, section 2933 conduct credits must be earned through active participation in qualifying programs. (See § 2933, subds. (a) and (b).) Therefore, to be made available before sentencing, every city and county jail, industrial farm and road camp throughout the state (see § 4019, subd. (a)(4)) would have to establish and administer a section 2933 conduct credit program. The many obstacles, including but not limited to funding, that would impede the establishment and administration of such programs where none currently exist justify the limitation of section 2933 credits to postsentence imprisonment. (See *People* v. *Saffell* (1979) 25 Cal.3d 223, 234-235 [157 Cal.Rptr. 897, 599 P.2d 92]; *People* v. *Lawrence* (1983) 144 Cal.App.3d 290, 294 [192 Cal.Rptr. 165]; see also *In re Cleaver* (1984) 158 Cal.App.3d 770, 774 [204 Cal.Rptr. 835]); *People* v. *Davis* (1984) 154 Cal.App.3d 253, 255 [201 Cal.Rptr. 422].) Furthermore, even if section 2933 credits were available before trial and sentencing, many defendants would be unable to work on the full-time basis necessary to earn a one-half reduction of their sentence. (See § 2933, subd. (a).) This inability would result from the many conflicting demands on their time, such as court appearances, appointments with attorneys and investigators, participation in various studies and reports (e.g., §§ 1203, subds. (c) and (d); 1203d; 1203h; 1203.03, subd. (a); Cal. Rules of Court, rule 419(a)(4) and (a)(6)) and related travel and preparation time. Maintaining a full-time section 2933 work program in the face of these distractions would be difficult, if not impossible, for many defendants. Given that reality, it would be merely an empty gesture, as well as an impossible financial and administrative burden, to make section 2933 credits available before sentencing.

[12]*People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], does not compel a contrary conclusion. *Sage* held equal protection principles required section 4019 presentence conduct credits to be made available to detainee/felons who would otherwise spend a longer time in custody than similarly situated felons who serve no presentence time (*id.,* at pp. 507-508). An important distinction exists, however, between the accrual of conduct credits under sections 4019 and 2933. Under section 4019, credits are awarded automatically for passive good behavior. (See § 4019, subds. (b) and (c); *People* v. *Austin* (1981) 30 Cal.3d 155, 166 [178 Cal.Rptr. 312, 636 P.2d 1].) By comparison, there is nothing automatic about the award of section 2933 credits. Absent affirmative and sustained efforts to earn them, such credits will not be awarded. (See § 2933, subds. (a) and (b); compare § 4019, subds. (b) and (c) (credit "shall be deducted" from defendant's sentence "unless it appears by the record" that he or she has not behaved properly).) Because of this basic difference in the manner of accrual and the practical problems which necessitate the limited availability of section 2933 credits to postsentence availability of section 4019 credits, and consistent with equal protection principles, section 2933 credits may be withheld where section 4019 credits must be extended. (Accord *In re Cleaver, supra,* 158 Cal.App.3d at p. 774; *People* v. *Rosaia, supra,* 157 Cal.App.3d at pp. 844-845.)

## IV

■ Finally, Poole contends his case must be remanded for resentencing so the court may clarify the manner in which consecutive sentences are to be imposed.

The sentencing court stated the one-year terms on each of counts II, III and V were to be consecutive to count I. The judge never stated explicitly these 3 one-year terms were to be consecutive, not only to count I, but also consecutive to each other. The court's intent must be implied from his statement that the total term is eight years.

■ Ambiguities in the Penal Code must be construed in favor of the defendant when the language of the statute is susceptible of two reasonable interpretations. (*In re Jeanice D.* (1980) 28 Cal.3d 210 [168 Cal.Rptr. 455, 617 P.2d 1087].) However, here we do not have an ambiguous statute.

■ Poole cites no authority for the proposition an ambiguity in sentencing requires remand, nor have we found any such authority. Here the ambiguity is clarified by the court when the judge states Poole is sentenced to state prison for eight years.[13] The clerk's transcript also reflects the same total sentence of eight years.

Judgment affirmed.

Wiener, Acting P. J., and Lewis, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 29, 1985. Kaus, J., and Broussard, J., were of the opinion that the petition should be granted.

---

[13]"Why don't we go back through it, in case there's any question about what I've just stated.

"Count two will run consecutively with count one. Count three will run consecutively with count one. Count five will run consecutively with count one. The reason given for each of these counts two, three, and five running consecutively with count one is, as I have stated, rule 425(A)(1), the crimes and their objectives were predominately independent of each other.

"All right. Now, with respect to count six, that count will run concurrently with count one.

"Now, two-thirds of the base term for the crime of robbery set forth in count—as contained in count two will be stayed. Two-thirds of the base term for the crime of robbery set forth in count three will be stayed. Two-thirds of the base term for the crime of robbery set forth in count five will be stayed.

" . . . . . . . . . . . . . . . . . . . . . . .

"The defendant is sentenced to prison for the term of eight years. . . ."