Filed 11/13/20  P. v. McGee CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>TYRONE JAMES MCGEE,<br><br>  Defendant and Appellant. | G057821<br><br>(Super. Ct. No. 18HF1415)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Maria D. Hernandez, Judge.  Affirmed.

Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

\*      \*      \*

A jury convicted defendant Tyrone James McGee of robbery using a firearm. McGee contends the trial court's jury instruction on eyewitness identification testimony violated his due process rights by improperly directing the jury to correlate the accuracy of a witness's courtroom identification of McGee with the witness's certainty. We affirm.

I

FACTS AND PROCEDURAL HISTORY

*A. Underlying Robbery In San Juan Capistrano*

In September 2018, two masked men entered a Don Roberto Jewelers store in San Juan Capistrano while three employees—a manager, assistant manager, and sales associate—were working. One of the men brandished a black handgun with a silver barrel, and forced the manager to open the safe. The gunman took the merchandise in the safe and fled the scene with his companion. The robbery was recorded on the store's video surveillance system.

The gunman was about 5 feet and 7 to 9 inches tall. He wore a camouflage sweat suit and a black baseball cap with a gold sticker on the bill and a "D" logo with a white border. The gunman also wore "grayish green" gloves with padded knuckles and wrist straps as well as Nike brand sneakers that had gray cloth and "large knobs" on their soles. The sales associate saw that the gunman appeared to be bald. The other robber wore a blue and green hooded sweatshirt, red and white sneakers, and torn, light colored jeans.

The robbers left the store carrying the stolen merchandise in a white gym bag with a plaid design and shoulder strap. The sales associate also left the store and followed the two men who walked to their getaway car, where a third person sat waiting behind the steering wheel. When the robbers took off their masks while walking to the car the associate saw the side profile of the gunman in the camouflage sweat suit. The associate took a picture of the car with his phone and provided the vehicle information,

including its license plate number, to responding law enforcement investigators. The associate did not, however, report that he saw the gunman's side profile.

About a week later, using the vehicle information provided by the sales associate, law enforcement officers confirmed the getaway car belonged to McGee and, six days after the robbery, located and stopped McGee and two others in his car. The officers searched the vehicle but did not find any items from the robbery and released the vehicle and its occupants. Officers noted McGee was about 5 feet, 9 inches tall.

B. *Attempted Robbery in Escondido*

The next day, two men attempted to enter a Don Roberto Jewelers store in Escondido. The store was open and employees were working, but the front doors were locked as a general precautionary measure. The store manager saw one of the men shake the locked door while the other attempted to peer in through the store window. Both men ran away. The manager estimated the smaller of the pair as 5 feet and 4 or 5 inches tall and the other as 5 feet, 8 inches tall. The smaller man wore a blue and green hooded sweatshirt. Another witness who had been in the vicinity reported the men had been wearing gray and camouflage sweatshirts.

Within an hour of the attempted robbery, law enforcement officers stopped McGee—who had very short hair on his head, a quarter inch at most—sitting in the front passenger seat, with his girlfriend driving. A third individual, K.B., was sitting in the back seat.

The officers searched McGee's car and found several items, including: a loaded black handgun with a silver barrel hidden behind a console panel in the car; gloves with padded knuckles and wrist straps; a black baseball cap with a gold sticker on the bill and a large "D" logo with a white border; a pair of Nike brand sneakers with gray cloth and "large knobs" on their soles, on the floorboard where McGee had been sitting without shoes; a blue and green hooded sweatshirt with a facemask in its pocket; a white

duffel bag with a plaid design and shoulder strap; a faux pearl bracelet stolen in the robbery; cash; and five cell phones. No camouflage sweat suit was found.

Law enforcement analyzed data from the seized phones. A phone belonging to McGee's girlfriend had a mapping application running for a Don Roberto Jeweler's store located in Palmdale. On a phone belonging to McGee, an Orange County Sheriff's investigator found images of several Don Roberto jewelry stores. McGee's phone also contained a picture taken the day after the robbery showing K.B. wearing torn, light colored jeans and red and white sneakers. In an undated video, McGee and K.B. are depicted together with money and jewelry and McGee holding his finger to his lips, as if to suggest silence. A gold chain necklace in the video matched the description of one of the items stolen in the robbery. McGee's phone also contained an undated video of himself holding a black handgun with a silver barrel and another individual, who McGee called "Lil' Rico," wearing a camouflage sweat suit.

McGee's phone records contained information about his phone's locations on the day of the robbery. The information was consistent with the phone traveling from a location in Lynwood that was near K.B.'s home, to the Don Roberto Jewelers store in San Juan Capistrano where the robbery occurred, and back to the same location in Lynwood, during a six hour period. The timing and locations were consistent with the location and timing of the robbery. McGee's phone contained a text to K.B., a few hours before the robbery, stating: "I'm outside."

C. Robbery Convictions

The Orange County District Attorney's Office charged McGee with three counts of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)),[1] along with several sentencing enhancement allegations, including two for personally using a firearm. (§§ 667, subds. (d) & (e); 667.5, subd. (b); 1170.12, subds. (b) & (c)(1); and 12022.53,

---

[1]     All further undesignated statutory references are to the Penal Code.

4

subd. (b).) At trial, the sales associate in the San Juan Capistrano robbery identified McGee as the gunman. An investigator testified the associate did not report he saw the gunman's facial profile when interviewed on the day of the robbery.

During closing arguments, the prosecutor asserted the sales associate who identified McGee as the gunman at trial had been "sure" of his identification and had demonstrated "an exceptionally good memory" by memorizing the license plate number of McGee's car. The prosecutor also argued the associate correctly identified McGee because he would not have confused the two robbers because of the stark differences in appearance between McGee and the other robber.

McGee's counsel framed the case to the jury as "a pure I.D. case, a witness identification case . . . who is the person with the gun." Among other points, counsel asserted that the circumstances of the sales associate's courtroom identification of McGee—including the associate's failure to offer identification information to law enforcement officers six months earlier when the robbery occurred—showed the identification was "unreliable."

McGee's counsel also argued the evidence supported a conclusion that the gunman was Lil' Rico and not McGee. Counsel pointed out there was no direct connection between McGee and the gunman's camouflage sweat suit in the robbery video, the sweat suit was only seen on Lil' Rico (in one of McGee's phone images), and none of the evidence found in McGee's car when he was arrested had been found the day before during the first search of his car.

The trial court instructed the jury on eyewitness identification testimony based on CALCRIM No. 315. Among 14 factors listed, the instruction asked the jury to consider: "How certain was the witness when he or she made an identification?" As noted, the jury convicted McGee on all three robbery counts and found the allegation he personally used a firearm against the store manager and sales associate to be true. The

5

court, after finding true prior strike and prior serious felony allegations, sentenced McGee to a 26-year-prison term.

## II

### DISCUSSION

McGee challenges the trial court's use of CALCRIM No. 315 to instruct the jury on the eyewitness testimony. McGee contends CALCRIM No. 315's question on witness certainty "rendered [his] trial fundamentally unfair," violating his federal and state due process rights, "because [it] direct[ed] jurors to consider witness certainty when evaluating eyewitness identification[,] even though science has shown [] there is no correlation between witness certainty and the accuracy of an identification." (Capitalization omitted.) We disagree.

As instructed, CALCRIM No. 315 provides: "You have heard eyewitness testimony identifying the defendant. As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony. In evaluating identification testimony consider the following questions: Did the witness know or have any contact with the defendant before the event; how well could the witness see the perpetrator; what were the circumstances affecting the witness's ability to observe such as lighting, weather conditions, obstructions, distance and duration of observation and any distractions; how closely was the witness paying attention; was the witness under stress when he or she made the observation; did the witness give a description and how does that description compare to the defendant; how much time passed between the event and the time when the witness identified the defendant; was the witness asked to pick the perpetrator out of a group; did the witness ever fail to identify the defendant; did the witness ever change his or her mind about the identification; *how certain was the witness when he or she made the identification*; are the witness and defendant of different races; was the witness able to identify other participants in the crime; were there any other circumstances affecting the witness's ability to make an accurate identification. The People have the burden of

6

proving beyond a reasonable doubt that it was the defendant who committed the crime. If the People have not met this burden, you must find the defendant not guilty."

McGee, as the appellant, has the burden to demonstrate reversible error. (*People v. Alvarez* (1996) 49 Cal.App.4th 679, 694.) Our de novo review of his instructional error contention (*People v. Posey* (2004) 32 Cal.4th 193, 218) is subject to any controlling precedent by the California Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity Sales*).)

The Attorney General asserts McGee forfeited his contention by failing to object to or request a modification of CALCRIM No. 315 in the trial court. (See *People v. Sánchez* (2016) 63 Cal.4th 411, 461 (*Sánchez*) [defendant forfeited claim by failing to object to or request a modification of the certainty factor in CALJIC No. 2.92, the precursor to CALCRIM No. 315].) McGee concedes his lawyer did not object or request a modification but relies on section 1259 to argue that none was required "to preserve an instructional error issue [because his] substantial rights [were] affected by the erroneous instruction."

We are bound by the holdings of our Supreme Court and therefore we agree with the Attorney General that McGee forfeited the issue by failing to object or request a modification of the instruction. We also are bound by the Supreme Court's holding that a trial court may instruct the jury to consider a witness's certainty when making an identification. (*People v. Johnson* (1992) 3 Cal.4th 1183, 1232; see *Sánchez*, *supra*, 63 Cal.4th at p. 462.) McGee correctly notes the issue is presently pending in the high court in *People v. Lemcke*, review granted October 10, 2018, S250108, but that does not alter our requirement to follow the court's holdings in *Johnson* and *Sánchez*. (*Auto Equity Sales, supra,* 57 Cal.2d at p. 455.) Accordingly, the trial court did not err by instructing the jury with CALCRIM No. 315.

Finally, we note that even if the trial court erred in giving CALCRIM No. 315, McGee has not shown prejudice because it is not reasonably probable McGee would

7

have obtained a more favorable result had the trial court deleted the certainty factor from its instruction.  (*People v. Rivera* (1984) 162 Cal.App.3d 141, 146 [applying *People v. Watson* (1956) 46 Cal.2d 818, 836].)

The evidence showed McGee's appearance matched the gunman's physical description.  McGee's car was used in the San Juan Capistrano robbery and a gun similar to the one used in that robbery was found in McGee's car after police stopped and searched his car shortly after the attempted entry into the Escondido jewelry store.  Investigators also found in McGee's car a pair of light green or gray military gloves and a pair of "knobby" Nike shoes consistent with those worn by the gunman in the San Juan Capistrano store.  McGee's cell phone contained an image of K.B., taken the day after the San Juan Capistrano robbery, wearing clothes matching the description of the gunman's accomplice.  The picture showed K.B. wearing jewelry stolen from the store.

There is more.  McGee's cell phone data information showed he was at K.B.'s residence, then traveled to San Juan Capistrano and was in the vicinity when the robbery occurred, and then traveled back to K.B.'s residence.  McGee was arrested in Escondido with K.B. following his attempted robbery of another Don Roberto Jewelers store.  McGee's cell phone contained images of several other jewelry stores.

In sum, it is not reasonably probable McGee would have obtained a more favorable result had the trial court deleted the certainty factor in CALCRIM No. 315.

## III

### Disposition

The judgment is affirmed.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


FYBEL, J.