[No. S007747. Mar. 26, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY DUANE PRATHER, Defendant and Appellant.

**COUNSEL**

David L. Tucker, Jr., under appointment by the Supreme Court, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Robert M. Foster, Frederick R. Millar, Jr., and Steven H. Zeigen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LUCAS, C. J.**—In this case we consider whether article I, section 28, subdivision (f), of the California Constitution (a provision of an initiative

measure popularly known as "Proposition 8") bars application of the "double base term" limitation of Penal Code[1] section 1170.1, subdivision (g),[2] to "prior prison term" enhancements under section 667.5, subdivision (b).[3] For the reasons stated below, we conclude the constitutional provision does bar the double-base-term limitation, and therefore reverse the contrary Court of Appeal decision.

## FACTS

Defendant pleaded guilty to one count of second degree burglary (§ 459) and two counts of possession of a firearm by an ex-felon (§ 12021). He further admitted two sentence enhancement allegations: (i) service of a prior term of imprisonment within the meaning of section 667.5(b), and (ii) possession of a firearm while "released from custody" under section 12022.1.

The trial court sentenced defendant to the middle term of two years on the burglary charge.[4] In addition to this base sentence, defendant received two consecutive eight-month terms pursuant to section 1170.1, subdivision (a), a two-year enhancement under section 12022.1, and a one-year enhancement pursuant to section 667.5(b), for a total sentence of six years four months in state prison.

Defendant appealed, contending his sentence violated section 1170.1(g), which provides, with exceptions not applicable here, that "[t]he term of imprisonment shall not exceed twice the number of years imposed by the trial court as the base term pursuant to subdivision (b) of section 1170."

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] The full text of section 1170.1, subdivision (g) (hereafter section 1170.1(g)) reads: "The term of imprisonment shall not exceed twice the number of years imposed by the trial court as the base term pursuant to subdivision (b) of Section 1170 unless the defendant stands convicted of a 'violent felony' as defined in subdivision (c) of Section 667.5, or a consecutive sentence is being imposed pursuant to subdivision (b) or (c) of this section, or an enhancement is imposed pursuant to Section 667, 667.8, 667.85, 12022, 12022.2, 12022.4, 12022.5, 12022.55, 12022.6, 12022.7, 12022.75, or 12022.9, or an enhancement is being imposed pursuant to Section 11370.2, 11370.4, or 11379.8 of the Health and Safety Code, or the defendant stands convicted of felony escape from an institution in which he or she is lawfully confined."

[3] Section 667.5, subdivision (b) (hereafter section 667.5(b)) provides: "Except where subdivision (a) applies, where the new offense is any felony for which a prison sentence is imposed, in addition and consecutive to any other prison terms therefor, the court shall impose a one-year term for each prior separate prison term served for any felony; provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of five years in which the defendant remained free of both prison custody and the commission of an offense which results in a felony conviction."

[4] The trial court derived this "base term" pursuant to section 1170, subdivision (b), which provides in relevant part that "[w]hen a judgment of imprisonment is to be imposed, and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime."

Specifically, defendant asserted that the express language of section 1170.1(g) barred the trial court from applying the section 667.5(b) and section 12022.1 enhancements to increase his sentence beyond the double-base-term limit. The Court of Appeal agreed, and modified the judgment to stay that portion of the sentence exceeding four years in length.[5] We reverse.

## DISCUSSION

In June 1982, California voters enacted Proposition 8 (The Victims' Bill of Rights). Among other things that measure (i) created Penal Code section 667, providing a mandatory five-year sentence enhancement for prior "serious felony" convictions, and (ii) added article I, section 28, subdivision (f), to the state Constitution, mandating that: "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall be used *without limitation* for purposes of impeachment or enhancement of sentence in any criminal proceeding. When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court." (Italics added.)

In *People* v. *Jackson* (1985) 37 Cal.3d 826 [210 Cal.Rptr. 623, 694 P.2d 736], we considered whether the five-year enhancement for prior serious felonies contained in section 667, subdivision (a), was subject to the double-base-term rule of section 1170.1(g). After first noting that the "without limitation" language of article I, section 28, was "uncertain," we nonetheless concluded that section 667, subdivision (a), was impliedly excluded from the double-base-term limitation of section 1170.1. (37 Cal.3d at pp. 837-838.)

We reasoned in *Jackson* that, as a matter of statutory interpretation and in order to give full effect to the apparent intent of the drafters of section 667, subdivision (a), we should read section 1170.1(g) as if it contained an exception for section 667 enhancements. (*Jackson, supra,* 37 Cal.3d at p. 838.) We determined that the drafters of section 667 could not have intended section 1170.1 to apply to that provision, because if the double-base-term rule were applied to enhancements under section 667, subdivision (a), the full five-year enhancement could only rarely be imposed. (37 Cal.3d at p. 838.) We accounted for the failure to amend section 1170.1(g) to exclude section 667 enhancements as a mere "draftman's oversight."

Several decisions of the Court of Appeal, relying on *Jackson, supra,* 37 Cal.3d 826, and the "without limitation" wording of article I, section 28,

---

[5] Although the Court of Appeal ruled that neither the section 12022.1 enhancement nor the section 667.5(b) enhancement could exceed the double-base-term limit, the People seek review only of the section 667.5(b) ruling.

subdivision (f), have concluded that section 667.5(b) is likewise excluded from the double-base-term limitation of section 1170.1(g). (See, e.g., *People v. Doane* (1988) 200 Cal.App.3d 852 [246 Cal.Rptr. 366]; *People v. Poole* (1985) 168 Cal.App.3d 516 [214 Cal.Rptr. 502]; *People v. Hall* (1985) 168 Cal.App.3d 624 [214 Cal.Rptr. 289]. See also *People v. Traina* (1985) 168 Cal.App.3d 305, 309 [214 Cal.Rptr. 213] [dictum asserting "without limitation" language expressed voter intent to abrogate double-base-term rule as it relates to prior felony enhancements].)

The Court of Appeal below expressly declined to follow such authority, concluding instead that this case remains distinguishable from *Jackson.* The court first correctly observed that, unlike section 667, section 667.5 was not adopted as part of Proposition 8, but rather was enacted by the Legislature several years before passage of that initiative. The court, therefore, reasoned that *Jackson*'s "draftsman's oversight" analysis was inapplicable. Second, the court noted that in contrast to the five-year enhancement provided under section 667, the one-year enhancement under section 667.5(b) would not often be precluded by application of the double-base-term limitation. Thus, the court concluded that legislative intent to exclude section 667.5(b) enhancements from the operation of section 1170.1(g) was not so easily discernible.

Finally, the Court of Appeal below stated: "Effective on January 1, 1988, section 1170.1, subdivision (g), was amended so as to *expressly* except section 667, subdivision (a), enhancements from the 'double the base term' rule. (Stats. 1987, ch. 1423, § 3.7.) Thus, the Legislature has now made the *Jackson* ruling an express provision in the overall statutory sentencing scheme. The Legislature, however, did *not* amend section 1170.1, subdivision (g), at the same time so as to expressly except section 667.5, subdivision (b), from the 'double the base term' rule. It would be an unwarranted intrusion into the legislative arena to imply such an exception here. Our Legislature, having just addressed itself to the specific issue of which enhancement provisions are excepted from the 'double the base term' rule, must be presumed to have made *all* of the statutory amendments deemed necessary." (Italics in original.) Accordingly, the Court of Appeal concluded that *Jackson, supra,* 37 Cal.3d 826, was not controlling as to section 667.5 enhancements, and that such enhancements were subject to the double-base-term limitation contained in section 1170.1.

We agree that our reasoning in *Jackson, supra,* 37 Cal.3d 826, is not necessarily controlling here. The Legislature's failure to include section 667.5(b) enhancements within the list of exceptions contained in section 1170.1(g) does not appear to be the result of a mere "draftsman's oversight," nor can we discern any clear legislative intent to exclude such

enhancements from the double-base-term limitation. On the contrary, the Legislature's recent addition of several exceptions to section 1170.1(g) suggests that it may have intended no similar exclusion for section 667.5(b). (See *Estate of McDill* (1975) 14 Cal.3d 831, 837-838 [122 Cal.Rptr. 754, 537 P.2d 874] [legislative changes in some aspects of a statute are " 'indicative of an intent to leave the law as it stands in the aspect not amended' "].) Consequently, the question presented here cannot be resolved by statutory construction as in *Jackson.*

██ This analysis, however, does not conclude our inquiry. We must next consider whether article I, section 28, subdivision (f), of the California Constitution prohibits restricting enhancements based on prior felony convictions.

We have not had occasion to interpret the constitutional language "without limitation" in the sentence enhancement context. (Cf. *People v. Jackson, supra,* 37 Cal.3d at pp. 837-838 [finding the words "uncertain" and resolving the double-base-term issue on alternative grounds]; *People v. Fritz* (1985) 40 Cal.3d 227, 231 [219 Cal.Rptr. 460, 707 P.2d 833] ["whatever the 'without limitation' language . . . may have been intended to mean in the enhancement of sentence context," it did not eliminate trial court's discretionary power to strike enhancements in furtherance of justice].) In *People v. Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], however, we discussed the meaning of this language as applied to the use of prior felony convictions for *impeachment* purposes. In that case we considered whether article I, section 28, subdivision (f), abrogated the traditional power of trial courts to exclude evidence of prior convictions under Evidence Code section 352, when the probative value of such evidence is outweighed by its prejudicial effect. We observed: "As the People note, *subdivision (f) seems clear and absolute in its language*—'any' means 'any' and 'without limitation' means 'without limitation,' leaving no room for an interpretation which would preserve judicial discretion." (38 Cal.3d at p. 310 (plur. opn.), italics added.)

In *Castro* we declined, however, to give the language its apparent "clear and absolute" effect. We concluded that such an interpretation would conflict with another provision of the Constitution that appeared to preserve the court's traditional power to exclude evidence under Evidence Code section 352. (38 Cal.3d at p. 310 [noting Cal. Const., art. I, § 28, subd. (d), provides that "[n]othing in this *section* shall affect . . . Evidence Code Section 352, 782 or 1103"].) In order to reconcile the two provisions, we examined the historical context of the constitutional amendment. We found that rather than intending to "throw out the baby with the bath" (*id.* at p. 308) by entirely abrogating the discretion of the trial court, the drafters of

Proposition 8 intended only to "reject the rigid, black letter rules of exclusion which we had grafted onto the code by the [*People* v. *Antick* (1975) 15 Cal.3d 79 (123 Cal.Rptr. 475, 539 P.2d 43)] line of decisions." (38 Cal.3d at p. 312.) Accordingly, for purposes of impeachment we confined our interpretation of "without limitation" to those limitations placed on the Evidence Code by *Antick* and its progeny. (*Ibid.*)

In the sentence enhancement context, however, we face neither conflicting constitutional provisions nor clear intent by the electorate to reject a distinct line of judicially created law. We are aware of no constitutional language, in section 28 or elsewhere, that would preclude us from giving article I, section 28, subdivision (f), its "clear and absolute meaning" as it relates to enhancements under section 667.5(b). Moreover, unlike *Antick, supra,* 15 Cal.3d 79, there is no well-defined and substantial line of cases limiting the use of sentence enhancements prior to Proposition 8. ■ We thus have no cause to interpret article I, section 28, subdivision (f), as applying solely to *judicially* created limitations.[6] Because section 1170.1(b) "limits" the use of sentence enhancements under section 667.5(b), to the extent they exceed the double-base-term limitation, the language of article I, section 28, subdivision (f), would appear to bar application of that limitation to such enhancements.

We observed in *Brosnahan* v. *Brown* (1982) 32 Cal.3d 236, 247 [186 Cal.Rptr. 30, 651 P.2d 274], that the changes enacted pursuant to Proposition 8 were aimed, inter alia, "at achieving *more severe punishment for, and more effective deterrence of, criminal acts.*" (Italics added.) This general concern with increased punishment and effective deterrence was to be furthered in part by increasing the total period of imprisonment for recidivist offenders. The above conclusion is apparent not only from the voters' enactment of the "without limitation" language in article I, section 28, subdivision (f), but also from the initiative's simultaneous adoption of section 667, which imposes a mandatory five-year enhancement for each prior "serious felony" conviction.[7] ■ Exempting section 667.5(b) sentence enhance-

[6] The dissent argues "without limitation" must be construed to mean "without *judicially created* limitation." Such an interpretation, however, finds support in neither *Castro* (*supra,* 38 Cal.3d 301) nor the legislative history of Proposition 8 as discussed below.

[7] Contrary to the dissent's position that only judicially created limitations were to be affected, the creation of section 667 by Proposition 8 demonstrates dissatisfaction with the *Legislature* for failing to sufficiently punish dangerous felons. Indeed, the ballot arguments supporting Proposition 8 evinced similar discontent with both the courts *and* the Legislature. For instance, then Lieutenant Governor Mike Curb expressed, "For too long our courts *and the professional politicians in Sacramento* have demonstrated more concern with the rights of criminals than with the rights of innocent victims." (Ballot Pamp., Proposed Stats. and Amends. to Cal. Const., Primary Elec. (June 8, 1982), arguments in favor of Prop. 8, p. 34 [italics added].) Proponent Paul Gann echoed this concern by inquiring, "Why is it that the *Legislature* doesn't start getting serious about a problem until we, the people, go out and

ments from application of section 1170.1(g) accords with this intent to increase punishment for repeat offenders.

The legislative history of Proposition 8 supports this view. In addition to the overall tenor of the proponent's arguments favoring enhanced punishment, the Legislative Analyst's description of Proposition 8 presented to the voters in the June 1982 ballot pamphlet informed the voters of both the purpose and probable effect of the specific provisions relating to sentence enhancements for prior felony convictions: "Longer Prison Terms. Under existing law, a prison sentence can be increased from what it otherwise would be by from one to ten years, depending on the crime, if the convicted person has served prior prison terms. . . . Convictions resulting in probation or commitment to the Youth Authority generally are not considered for purposes of increasing sentences, *and there are certain limitations on the overall length of sentences.* . . . [¶] This measure includes two provisions that would *increase prison sentences* for persons convicted of specified felonies. First, upon a second or subsequent conviction for one of these felonies, the defendant could receive, on top of his or her sentence, an additional five-year prison term for each such prior conviction regardless of the sentence imposed for the prior conviction. . . . Second, *any prior felony conviction could be used without limitation in calculating longer prison terms.*" (Analysis by the Legis. Analyst, Ballot Pamp., Proposed Stats. & Amends. to Cal. Const., Primary Elec. (June 8, 1982) pp. 54-55, italics added.)

Based on the foregoing, we agree with *People* v. *Traina, supra,* 168 Cal.App.3d 305, 309, that the enactment of article I, section 28, subdivision (f), "was an unambiguous expression of the electorate's intent to supersede the twice the base term rule as it applied to [prior felony] enhancements." Both the language and history of article I, section 28, subdivision (f), suggest it was intended not only to increase the length of sentences served by recidivist offenders *generally,* but also *specifically* to abrogate (with respect to prior-felony-conviction enhancements) statutory "limitations on overall length of sentences." Section 1170.1(g) provides such a "limitation": It expressly precludes application of an otherwise valid prior felony sentence enhancement *solely because it would extend the total length of incarceration beyond certain specified limits.*

qualify an initiative?" (*Ibid.,* italics added.) Finally, then Attorney General George Deukmejian emphasized that the initiative "enacts new laws that those of us in law enforcement have sought from the legislature without success. . . . [¶] THERE IS ABSOLUTELY NO QUESTION THAT THE PASSAGE OF THIS PROPOSITION WILL RESULT IN MORE CRIMINAL CONVICTIONS, MORE CRIMINALS BEING SENTENCED TO STATE PRISON, AND MORE PROTECTION FOR THE LAW-ABIDING CITIZENRY." (*Ibid.,* emphasis in original.) In light of such criticism, it is inaccurate to suggest the electorate and drafters were concerned solely with overturning court-made law.

To hold that enhancements for prior felony imprisonment remain subject to the double-base-term limitation, notwithstanding the language and history of article I, section 28, subdivision (f), would ignore the purpose of that constitutional provision and thwart the intent of the voters and framers of Proposition 8. (See *People* v. *Fritz, supra,* 40 Cal.3d 227, 233 [dis. opn. by Lucas, J.].) Accordingly, we conclude the California Constitution bars application of the double-base-term limitation of section 1170.1(g) to sentence enhancements based on section 667.5(b).

In so holding, we do not suggest that article I, section 28, subdivision (f), is without ambiguity or that its application will be obvious in all cases. On the contrary, we recognize that the phrase "without limitation" can present unique interpretive difficulties. As Justice Grodin observed in his concurring opinion in *People* v. *Fritz, supra,* 40 Cal.3d at page 232: "In the context of sentence enhancements, the 'without limitation' language has no clear referent. Enhancement of sentences can occur only within a system of rules which prescribes what sorts of prior convictions are to be used for purposes of enhancement, and the criteria and procedure by which enhancements are to be computed in relation to the defendant and the crime he has committed. All of these criteria can be viewed both positively and negatively, i.e., as stating the conditions under which enhancement will or may occur, or as stating the circumstances under which they will not. A rule of law which provides that sentences will be enhanced on the basis of certain types of crimes, for example, carries with it the negative implication that enhancement will not occur on the basis of crimes outside the delineated category. Similarly, there is a negative aspect to a rule of law which prescribes the period within which prior crimes must have occurred in order to form the basis for enhancement or the types of crimes of which the defendant must be convicted currently in order that his sentence be enhanced. In the case of each of these criteria, the negative implication of the rule can be viewed as a 'limitation' upon enhancement, yet the 'limitation' exists only as the flip side of the rule's 'positive' aspect."

In short, the "without limitation" language, taken to its literal extreme, might render meaningless all legislative criteria for sentence enhancements based on prior felony convictions because any affirmatively expressed criterion for enhancement necessarily "limits" by implication the use of others not specified. Although this theoretical quandary might leave the constitutional language somewhat "uncertain," we do not find this condition fatal.

█ In construing constitutional and other initiative enactments, we must give the language of the enactment "a liberal, practical common-sense construction which will meet changed conditions and the growing needs of the people." (*Amador Valley Joint Union High School Dist.* v. *State Bd. of*

*Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281].) For purposes of this case, we decline to announce a definitive interpretation of "without limitation." Nevertheless, we find it useful to discuss the essential features that a "common-sense construction" of these terms should address.

Justice Grodin's concurring opinion in *People* v. *Fritz, supra,* 40 Cal.3d at page 232, posits one possible interpretation of Proposition 8: "[T]he 'without limitation' language of section 28(f) [might be viewed as] intended to preclude limitations which are 'external' to the enhancement statute, while preserving limitations which are 'internal.'" The problem with such an interpretation, according to Justice Grodin, is that "[s]uch a distinction, . . . quite apart from the fact that it finds no support in the language or history of the initiative, makes no sense. Why would the voters care whether the 'limitation' imposed by the Legislature is contained in the same statute or the provision for enhancement, or in a different statute?"

A somewhat more sophisticated interpretation begins with the following axiom: Although article I, section 28, subdivision (f), may remove certain legislative and judicial obstacles to the use of prior felony convictions for enhancement purposes, it does not divest the Legislature of its basic power *to define* particular enhancements and determine the appropriate period by which a sentence may be increased as a result thereof. Implicit in this interpretation is the notion that, in some cases, a particular statutory restriction on the use of an enhancement may be so integrally related to an enhancement provision that it may be said to constitute either an essential definitional element of the enhancement itself, or a necessary precondition to application of the enhancement in a particular context, in which case the definitional restriction should not be considered a "limitation" for purposes of article I, section 28.

An illustration may prove useful. Under the foregoing theory, the Legislature could properly restrict enhancements to only "serious" felonies, but could not effectively prohibit enhancements by imposing a general cap on the overall length of a sentence. Both examples would "limit" enhancements. But the former category acts to limit the applicable class of criminals by specifically including only those felons having committed sufficiently serious crimes, whereas the latter limitation operates generally, placing a ceiling on the number of enhancements that may be used. This example indicates two important considerations in determining the permissibility of a limitation: (i) the level of generality (e.g., does the restriction apply to a large number of different enhancements?), and (ii) the purpose behind the limitation (i.e., to define the applicable class of felons or restrict available penalties once a class of felons has been defined).

■ We are persuaded for the reasons discussed above, and in view of the language and history of article I, section 28, that general caps or ceilings on overall length of sentence, such as the one contained in 1170.1(g), are not of such conditional or definitional character and, accordingly, may not be applied to limit the use of prior felony convictions for sentence enhancement purposes.

Defendant's final contention is that even if, as we hold today, article I, section 28, does bar application of section 1170.1(g) to enhancements based on "prior felony *conviction*[*s* ]," it does not bar application of the double-base-term limitation to enhancements for "prior *prison terms*" under section 667.5(b). Defendant relies for this proposition on *People* v. *Rodrigues* (1988) 205 Cal.App.3d 1487 [253 Cal.Rptr. 306], which was decided shortly after the Court of Appeal filed its decision in the present case.

The *Rodrigues* court, like the Court of Appeal here, first concluded our holding in *Jackson, supra,* 37 Cal.3d 826, was not controlling on the question of the double-base-term limitation's applicability to section 667.5(b) enhancements. Furthermore, it found as a matter of statutory construction that section 1170.1(g) could not be read to contain an implied exception for section 667.5(b) enhancements. (205 Cal.App.3d at pp. 1492-1493.) Turning to the constitutional question, the court held that "Section 28, subdivision (f) . . . has no bearing on prior-prison-term enhancements," because the constitutional provision relates only to "unlimited use of *prior felony convictions,* not prior prison terms." (*Id.* at pp. 1493-1494, italics in original.) The court reasoned that "prior felony convictions and prior prison terms are distinct words of legal art. The phrase, 'prior felony conviction' cannot be read to include 'prior prison term.'" (*Id.* at p. 1494; see also *People* v. *Maki* (1984) 161 Cal.App.3d 697, 699-700 [207 Cal.Rptr. 777] [applying identical reasoning to hold that article I, section 28, subdivision (f), does not abrogate the five-year "washout provision" contained in section 667.5(b)].)

We find this interpretation of article I, section 28, subdivision (f), untenable. ■ As we observed in *Amador Valley, supra,* 22 Cal.3d 208, 244-245, a constitutional provision is "necessarily couched in general terms or language, [and thus should] not be interpreted according to narrow or supertechnical principles, but liberally and on broad general lines, so that it may accomplish in full measure the objects of its establishment and so carry out the great principles of government." (*Ibid.,* quoting from *Stephans* v. *Chambers* (1917) 34 Cal.App. 660, 663-664 [168 P. 595].) The *Rodrigues* court's (*supra,* 205 Cal.App.3d 1487) hypertechnical reading of Proposition 8 conflicts with this basic principle and ignores the underlying purposes of both that provision and section 667.5(b), namely, to provide increased

terms of imprisonment for recidivist felony offenders. (See, e.g., *People* v. *Cardenas* (1987) 192 Cal.App.3d 51, 57 [237 Cal.Rptr. 249]; *People* v. *Rivera* (1984) 162 Cal.App.3d 141, 150 [207 Cal.Rptr. 756].)

Section 667.5(b) provides that "where the new offense is any felony for which a prison sentence is imposed, in addition and consecutive to any other prison terms therefor, the court shall impose a one-year term for each prior separate prison term served *for any felony.*" (Italics added.) We think it clear that section 667.5(b) is aimed primarily at the underlying felony conviction, and only secondarily, and as an indicium of the felony's seriousness, at the prior prison term. That is, we believe section 667.5(b), fairly read, merely provides a special sentence enhancement for that particular *subset* of "prior felony convictions" that were deemed serious enough by earlier sentencing courts to warrant actual imprisonment. (See, e.g., *People* v. *Hurley* (1983) 144 Cal.App.3d 706, 713 [192 Cal.Rptr. 805] ["a prior prison term (as defined in § 667.5) enhances the sentence of a person who commits [a felony] serious enough to warrant imprisonment"]; *People* v. *Gaines* (1980) 112 Cal.App.3d 508, 515 [169 Cal.Rptr. 381] ["section 667.5 addresses itself to that class of prior felonies which have warranted imprisonment"].) ■ Accordingly, we hold that the broad mandate of article I, section 28, subdivision (f), concerning the use of any "prior felony conviction[s]" for enhancement purposes, necessarily includes the lesser category of enhancements based on prior felony convictions for which imprisonment was imposed.

CONCLUSION

We conclude that article I, section 28, subdivision (f), of the California Constitution supersedes the double-base-term limitation contained in section 1170.1(g) as applied to sentence enhancements based on prior felony convictions. We further hold that enhancements pursuant to section 667.5(b) are enhancements based on "prior felony convictions" within the meaning of article I, section 28, subdivision (f). Accordingly, we reverse the decision of the Court of Appeal and remand the cause for further proceedings consistent with our opinion.

Panelli, J., Kennard, J., and Kaufman, J.,* concurred.

EAGLESON, J.—I concur in the judgment, and in the bulk of the majority's reasoning. Whatever else it means, article I, section 28, subdivision (f)

---

* Retired Associate Justice of the Supreme Court sitting under assignment by the Acting Chairperson of the Judicial Council.

(hereafter section 28(f)), was certainly intended to preclude application of the double-the-base-term rule to enhancements based on prior felonies.

I have reservations, however, about the majority's more general comments on the meaning of section 28(f). (Maj. opn., *ante,* at pp. 437-439.) These comments are unnecessary to our holding, and given the infinite variety of prior-felony enhancement issues which may arise, they seem premature and imprudent.

As the majority recognize, "the phrase 'without limitation' can present unique interpretive difficulties" in the context of sentence enhancement. (Maj. opn., *ante,* at p. 437.) Any current effort, however tentative, to develop a "general theory" of section 28(f) may present unforeseen difficulties later. To me, it therefore seems wisest to proceed cautiously, on a case-by-case basis.

For this reason, I do not subscribe to the majority's discussion on pages 437 through 439. In all other respects, I concur in the majority's analysis and result.

**MOSK, J.**—I dissent. The majority conclude that the judgment of the Court of Appeal must be reversed. Their ultimate premise is that article I, section 28, subdivision (f), of the California Constitution (hereafter article I, section 28(f)) abrogates the "double the base term" limit of Penal Code section 1170.1, subdivision (g) (hereafter section 1170.1(g)), as applied to sentence enhancements for prior felony convictions. That premise is unsound. As will appear, article I, section 28(f), has no relevant effect on section 1170.1(g) whatever.

I

Defendant was charged with, among other offenses, one count of second degree burglary (Pen. Code, § 459) and two counts of possession of a concealable firearm by a person previously convicted of a felony (*id.,* § 12021, subd. (a)). It was alleged for purposes of enhancement of sentence that he had previously served a prison term (*id.,* § 667.5, subd. (b)), and that he committed one of the firearm violations charged "while . . . released from custody" on another offense (*id.,* § 12022.1, subd. (b)).

Defendant pleaded guilty to the charges and admitted the allegations. The court sentenced him to a total term of six years and four months in prison, as follows: two years for burglary, which was the middle term for the offense and was designated by the court as the base term for purposes of sentencing (Pen. Code, §§ 1170, subd. (b), 1170.1, subd. (a)); eight months for each of the two firearm violations, which were designated the subordi-

nate terms (*id.*, § 1170.1, subd. (a)); two years for the firearm enhancement (*id.*, § 12022.1, subd. (b)); and one year for the prior-prison-term enhancement (*id.*, § 667.5, subd. (b)).

On appeal, defendant contended that his sentence violated the "double the base term" limit of section 1170.1(g): "The term of imprisonment shall not exceed twice the number of years imposed by the trial court as the base term . . . ." The Court of Appeal agreed, and proceeded to modify the judgment to stay two years and four months of the total sentence—the portion that exceeded the "double the base term" limit here of four years.

## II

Article I, section 28(f)—which was adopted by the electorate at the June 1982 Primary Election as part of the initiative measure commonly referred to as "Proposition 8"—declares in pertinent part that "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding."

Crucial here is the meaning of article I, section 28(f), especially the phrase "without limitation." In construing such a provision, a court has as its paramount task to determine the intent of the voters. (E.g., *In re Lance W.* (1985) 37 Cal.3d 873, 889 [210 Cal.Rptr. 631, 694 P.2d 744].) In carrying out that task, it starts with the language of the measure. (E.g., *ITT World Communications, Inc.* v. *City and County of San Francisco* (1985) 37 Cal.3d 859, 866 [210 Cal.Rptr. 226, 693 P.2d 811].) But a court is not constrained by that language. When it finds the words ambiguous, it may attempt to interpret them with the assistance of extrinsic materials reflecting the voters' intent. (See *id.* at p. 868.)

What the phrase "without limitation" means is far from clear. This fact has been noted time and again by this court and its members, sometimes expressly and sometimes impliedly. (See *People* v. *Fritz* (1985) 40 Cal.3d 227, 230-231 [219 Cal.Rptr. 460, 707 P.2d 833]; *id.* at pp. 231-233 (conc. opn. of Grodin, J.); *People* v. *Castro* (1985) 38 Cal.3d 301, 309-312 [211 Cal.Rptr. 719, 696 P.2d 111] (plur. opn.); *People* v. *Jackson* (1985) 37 Cal.3d 826, 837 [210 Cal.Rptr. 623, 694 P.2d 736].) The reason for the difficulty is plain.

"In the context of sentence enhancements, the 'without limitation' language has no clear referent. Enhancement of sentences can occur only within a system of rules which prescribes what sorts of prior convictions are to be used for purposes of enhancement, and the criteria and procedure by

which enhancements are to be computed in relation to the defendant and the crime he has committed. All of these criteria can be viewed both positively and negatively, i.e., as stating the conditions under which enhancement will or may occur, or as stating the circumstances under which they will not. A rule of law which provides that sentences will be enhanced on the basis of certain types of crimes, for example, carries with it the negative implication that enhancement will not occur on the basis of crimes outside the delineated category. Similarly, there is a negative aspect to a rule of law which prescribes the period within which prior crimes must have occurred in order to form the basis for enhancement or the types of crimes of which the defendant must be convicted currently in order that his sentence be enhanced. In the case of each of these criteria, the negative implication of the rule can be viewed as a 'limitation' upon enhancement, yet the 'limitation' exists only as the flip side of the rule's 'positive' aspect." (*People* v. *Fritz, supra,* 40 Cal.3d at p. 232 (conc. opn. of Grodin, J.).)

The majority concede the ambiguity of the phrase "without limitation." "[W]e do not suggest that article I, section 28, subdivision (f), is without ambiguity or that its application will be obvious in all cases. On the contrary, we recognize that the phrase 'without limitation' can present unique interpretive difficulties." (Maj. opn., *ante,* at p. 437.) The majority's concession is compelled by the force of their own analysis. At one point, they seem to say that the phrase must be construed literally and, so construed, yields the result they reach. "[T]he enactment of article I, section 28, subdivision (f), 'was an unambiguous expression of the electorate's intent to supersede the twice the base term rule as it applied to [prior felony] enhancements.' " (*Id.* at p. 436.) But at another point, they seem to say that the phrase must *not* be construed literally, lest it yield an untenable result. "[T]he 'without limitation' language, taken to its literal extreme, might render meaningless all legislative criteria for sentence enhancements based on prior felony convictions because any affirmatively expressed criterion for enhancement necessarily 'limits' by implication the use of others not specified." (*Id.* at p. 437.)

Faced with ambiguity in the meaning of the phrase "without limitation," I turn to extrinsic aids that may reveal indications of the intent of those who voted for Proposition 8. Such aids include, for example, the analysis of the Legislative Analyst and the ballot arguments. (E.g., *ITT World Communications, Inc.* v. *City and County of San Francisco, supra,* 37 Cal.3d at p. 868.)

Contrary to the apparent view of the majority, the analysis of the Legislative Analyst provides little if any assistance in this matter. The relevant portion is as follows.

"**Longer Prison Terms.** Under existing law, a prison sentence can be increased from what it otherwise would be by from one to ten years, depending on the crime, if the convicted person has served prior *prison terms,* and a life sentence can be given to certain repeat offenders. Convictions resulting in probation or commitment to the Youth Authority generally are not considered for the purpose of increasing sentences, and there are certain limitations on the overall length of sentences.

"This measure includes two provisions that would increase prison sentences for persons convicted of specified felonies. First, upon a second or subsequent conviction for one of these felonies, the defendant could receive, on top of his or her sentence, an *additional* five-year prison term for each such prior conviction, regardless of the sentence imposed for the prior conviction. This provision would not apply in cases where other provisions of law would result in even longer prison terms. Second, any prior felony conviction could be used without limitation in calculating longer prison terms." (Ballot Pamp., Proposed Stats. and Amends. to Cal. Const. with arguments to voters, Primary Elec. (June 8, 1982), analysis of Prop. 8 by Legis. Analyst, pp. 54-55, boldface and italics in original.)

As pertinent here, the above analysis does little more than paraphrase article I, section 28(f), as it applies to the use of prior felony convictions for enhancement. And it does absolutely nothing more than quote (without quotation marks) the phrase whose meaning must here be determined.

More helpful by far are the ballot arguments. It is clear from the arguments in favor that Proposition 8 was framed, at least in part, to overrule and preempt judicial decisions that the Legislature had failed or refused to overrule or preempt. (See *People* v. *Castro, supra,* 38 Cal.3d at p. 312 (plur. opn.) [recognizing that "[t]he dissatisfaction of the proponents with the appellate courts was expressed in the literature that supported the initiative"].)

One proponent argued in relevant part: "It is time for the people to take decisive action against violent crime. *For too long our courts and the professional politicians in Sacramento have demonstrated more concern with the rights of criminals than with the rights of innocent victims.* This trend must be reversed. By voting 'yes' . . . you will restore balance to the rules governing the use of evidence against criminals, you will limit the ability of violent criminals to hide behind the insanity defense, and you will give us a tool to stop extremely dangerous offenders from being released on bail to commit more violent crimes." (Ballot Pamp., Proposed Stats. and Amends.

to Cal. Const. with arguments to voters, Primary Elec. (June 8, 1982), arguments in favor of Prop. 8, p. 34, italics added.)

Another proponent argued: "Crime has increased to an absolutely intolerable level. [¶] While criminals murder, rape, rob and steal, victims must install new locks, bolts, bars and alarm systems in their homes and businesses. Many buy tear gas and guns for self-protection. FREE PEOPLE SHOULD NOT HAVE TO LIVE IN FEAR. [¶] *Yet, higher courts of this state have created additional rights for the criminally accused and placed more restrictions on law enforcement officers. This proposition will overcome some of the adverse decisions by our higher courts.* [¶] THIS MEASURE CREATES RIGHTS FOR THE VICTIMS OF VIOLENT CRIMES. *It enacts new laws that those of us in law enforcement have sought from the Legislature without success.*" (Ballot Pamp., Proposed Stats. and Amends. to Cal. Const. with arguments to voters, Primary Elec. (June 8, 1982), arguments in favor of Prop. 8, p. 34, emphasis in original, italics added.)

The majority disagree with this reading of the intent of the framers of Proposition 8. They say that "the ballot arguments supporting Proposition 8 evinced . . . discontent with both the courts *and* the Legislature." (Maj. opn., *ante,* at p. 435, fn. 7, italics in original.) That is true. But read in their historical context, those arguments evinced discontent with the Legislature essentially because it had failed or refused to overrule or preempt decisions by the courts—and especially this court. The majority also say that "[i]n the sentence enhancement context" the ballot arguments had no "distinct line of judicially created law" prior to Proposition 8 to reject. (*Id.* at p. 435.) That also may be true. But as stated, the framers' apparent intent was not simply to overrule decisional law already made but also to preempt the making of similar law in the future.

In view of the foregoing, I conclude that the phrase "without limitation" must be construed to mean—if it can be construed to mean anything at all—"without *judicially created* limitation." Such an interpretation accords with what we can infer to have been the intent of the voters, i.e., to overrule and preempt judicial decisions limiting the use of prior felony convictions for enhancement. It also avoids an untenable result, i.e., a construction that would undermine the existence of enhancements at the same time that it would bar limitation on their use. (Cf. *People* v. *Castro, supra,* 38 Cal.3d at p. 312 (plur. opn.) [effectively construing the phrase to mean "without *judicially created* limitation" insofar as it qualifies the applicability of art. I, § 28(f), to the use of prior felony convictions "for purposes of impeachment"].)

The majority construe the phrase "without limitation" differently. They appear to understand it to mean that statutory restrictions on the use of an enhancement that are "conditional" or "definitional" (maj. opn., *ante,* at p. 439) are allowed, but those that are not are barred. That construction, however, is nothing more than the so-called "internal/external" interpretation under a different label. "The problem with such an interpretation," as the majority themselves appear to recognize, "is that 'such a distinction, . . . quite apart from the fact that it finds no support in the language or history of the initiative, makes no sense. Why would the voters care whether the "limitation" imposed by the Legislature is contained in the same statute or the provision for enhancement, or in a different statute?' " (*Id.* at p. 438.) In a word, the majority's construction renders the "without limitation" mandate an empty formal requirement for the drafting of statutes. Such an interpretation cannot be accepted.

In spite of their formalistic construction of the phrase, the majority discern therein a substantive requirement barring any "general cap on the overall length of a sentence." (Maj. opn., *ante,* at p. 438.) I cannot. If the Legislature retains the authority to define and condition enhancements—as the majority evidently believe it does—it may then introduce a "general cap" into any given enhancement as part of its definition or one of its conditions. Thus, it may define an enhancement to include all in a given class whose total sentence, excluding the enhancement, is less than double the base term. Or it may subject the application of an enhancement to the condition that the total sentence, including the enhancement, does not exceed double the base term. Therefore, the majority's formalistic construction of the phrase is inconsistent with the existence of a substantive requirement barring any "general cap on the overall length of a sentence" (*ibid.*), or at the very least renders such a requirement nugatory.

## III

It follows from the analysis presented above that the majority are wrong when they conclude that article I, section 28(f), abrogates the "double the base term" limit of section 1170.1(g) as applied to enhancements for prior felony convictions. As explained, the crucial phrase "without limitation" contained in article I, section 28(f) means, if anything, "without *judicially created* limitation." The "limitation" effected by section 1170.1(g) was created not by the courts but—obviously—by the Legislature. Therefore, article I, section 28(f), has no relevant effect on section 1170.1(g) whatever.

## IV

In conclusion, I have reviewed the decision of the Court of Appeal and have found it unobjectionable. Therefore, I would affirm the judgment of that court.

Broussard, J., concurred.

Appellant's petition for a rehearing was denied May 17, 1990. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.