[No. A070471. First Dist., Div. Three. July 25, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL CHARLES CRESSY, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II., III., and VI.

COUNSEL

Eve Shapiro, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CORRIGAN, J.—In the published portion of this opinion (pts. I., IV., and V.), we reject defendant's claims that the court improperly denied his pretrial *Miranda*[1] motion and illegally enhanced his sentence by one year for a prior prison term under the three strikes sentencing scheme. We also reject his assertion that the sentencing scheme violates equal protection guarantees. In the unpublished portion of this opinion (pts. II., III., and VI.), we reject defendant's assignments of error for evidentiary rulings, instruction upon reasonable doubt, and sentencing considerations.

*Procedural History*

Defendant was convicted of possession of methamphetamine. The allegations that he had a prior serious felony conviction, alleged under Penal Code section 1170.12, subdivisions (b) and (c),[2] and three prior prison commitments, alleged under section 667.5, subdivision (b), were found true.

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

[2] Penal Code section 1170.12 is the initiative version of the three strikes law, adopted by the voters on November 8, 1994. Unless otherwise indicated, all further statutory references are to the Penal Code.

At sentencing, the court selected the aggravated term of three years for possession of methamphetamine, doubled to six years under section 1170.12, subdivision (c)(1). The court then added one year for each of defendant's three prior prison terms, for a total of nine years in prison.

*Facts*

On January 29, 1995, around 11:30 p.m., Deputy Sheriff Howe stopped defendant's car for expired registration tabs. As Howe approached the car, he saw defendant's hands extended out of the driver's window shuffling through a wallet, and he saw a syringe fall from either the wallet or defendant's hands. Defendant said, " 'Goddamn it. I don't know how that got there.' " When Howe asked if defendant had any lawful reason for carrying the syringe, defendant responded, " 'That's not my rig. I don't use needles.' " The officer arrested defendant for possession of the syringe.

Before searching defendant, Howe asked if he had any other needles or paraphernalia on his person. Defendant responded in the negative, but, as Howe was patting his pants pocket, defendant said, " 'I got a quarter in my right front pocket.' " Howe understood defendant to mean a quarter gram of a controlled substance such as methamphetamine. Howe explained he had asked about needles "[f]or my own safety. I had just arrested him for a hypodermic syringe. I didn't want to get stuck with another one that might be on his person somewhere." The deputy removed a plastic baggie containing a yellow-white powder from defendant's pocket. The deputy also found a plastic baggie containing a small amount of white powder residue in defendant's wallet.

The contents of the baggie from defendant's pocket weighed .18 grams and contained methamphetamine. The contents of the baggie from defendant's wallet were not tested.

Defendant testified that he happened upon an acquaintance, Carrie Mills, who needed a ride home. Shortly after Mills got in the car, Deputy Howe made his detention. Mills told defendant she might be arrested and handed him a plastic baggie, asking him to hold it for her. Defendant placed the baggie in his pants pocket without looking at it or considering what it might contain. While attempting to show his license to the deputy, defendant extended his hands outside the driver's window so the deputy would not shoot him. At that point, Mills threw her syringe out the driver's window. Defendant admitted that Howe found the second plastic baggie in his wallet. However, he denied telling Howe he had methamphetamine in his pocket.

In rebuttal, Howe testified there were no outstanding warrants for defendant's passenger, and she was released at the scene.

## Discussion

### I. *Alleged Miranda Violation*

█ Defendant first alleges the trial court erroneously admitted the statement, " 'I got a quarter in my right front pocket,' " because it was obtained in violation of his Fifth Amendment privilege under the Federal Constitution. █ A defendant must be admonished of his *Miranda* rights only if he is subjected to custodial interrogation. (*Miranda* v. *Arizona, supra*, 384 U.S. at p. 477 [16 L.Ed.2d at p. 725].) The Attorney General concedes that, at the time defendant made the statement in question, he had already been arrested and consequently was in custody for purposes of a *Miranda* analysis. Additionally, "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (*Rhode Island* v. *Innis* (1980) 446 U.S. 291, 301 [64 L.Ed.2d 297, 308, 100 S.Ct. 1682], fns. omitted.)

█ The Attorney General asserts that Deputy Howe's question was not the type of interrogation contemplated by the court in *Rhode Island* v. *Innis, supra*, for two reasons: (1) just as with routine booking inquiries, the question was of a kind normally attendant to arrest and custody; and (2) because the question was narrowly designed to discover only needles or paraphernalia, it was not reasonably likely to have elicited the particular incriminating response volunteered by defendant. We need not rule on either of these theories. Assuming arguendo that Howe's question was interrogation within the meaning of *Rhode Island* v. *Innis*, we conclude the "public safety" exception eliminated the requirement of *Miranda* warnings in this situation. (*New York* v. *Quarles* (1984) 467 U.S. 649, 657-658 [81 L.Ed.2d 550, 557-559, 104 S.Ct. 2626].)[3]

In *New York* v. *Quarles, supra*, a woman told police she had been raped, that her assailant had a gun, and had fled into a supermarket. Quarles, who matched the description given, was detained by officers inside the market. When officers found an empty shoulder holster on his person, they asked Quarles where the gun was. He directed them to the gun hidden in a nearby carton. (467 U.S. at pp. 651-652 [81 L.Ed.2d at pp. 553-555].) The trial court excluded the defendant's statement, the gun, and evidence of subsequent statements in which the defendant discussed ownership of the weapon.

---

[3] Although the trial court did not rule on this theory, Deputy Howe's testimony at the *in limine* motion on this subject was uncontradicted. Therefore, the facts in support of this theory are not disputed and properly form the basis of our ruling. "It is axiomatic that we review the trial court's rulings and not its reasoning. [Citations.]" (*People* v. *Mason* (1991) 52 Cal.3d 909, 944 [277 Cal.Rptr. 166, 802 P.2d 950].)

(*Id.* at pp. 652-653 [81 L.Ed.2d at pp. 554-555].) ■ The Supreme Court reversed that ruling: "We conclude that the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination. We decline to place officers . . . in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the *Miranda* warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them." (*Id.* at pp. 657-658 [81 L.Ed.2d at p. 558], fn. omitted.)

*New York* v. *Quarles*, *supra*, sets forth the "public safety" exception to the requirements of *Miranda*. In California, this exception has been applied to similar cases in which officers have asked arrestees for the location of missing weapons before giving the *Miranda* admonition. (*People* v. *Gilliard* (1987) 189 Cal.App.3d 285, 291-292 [234 Cal.Rptr. 401]; *People* v. *Cole* (1985) 165 Cal.App.3d 41, 52 [211 Cal.Rptr. 242].) We have found no case in this state that has applied the "public safety" exception when an officer is concerned for only his own safety and does not inquire about weapons per se but rather about objects that are nonetheless dangerous.

■ Defendant first contends that the "public safety" exception cannot be applied to a situation in which the officer is concerned only with his own safety and not the public's at large. Defendant, however, offers no logical explanation why the safety of an officer should be given less deference than the safety of the general public, particularly when the threat to an officer is often of a more immediate nature. Moreover, although the officers in *New York* v. *Quarles*, *supra*, were not concerned for their own safety (467 U.S. at p. 655 [81 L.Ed.2d at pp. 556-557]), the Supreme Court indicated that the safety of officers was a valid consideration under the "public safety" exception. In response to the argument that the exception would be difficult for officers to apply in the field, the court wrote: "We think police officers can and will distinguish almost instinctively between questions necessary to secure *their own safety* or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect." (*Id.* at pp. 658-659 [81 L.Ed.2d at p. 559], italics added.)

The Supreme Court's consideration of the officers' safety was also evidenced by its response to another argument: "The dissent argues that a public safety exception to *Miranda* is unnecessary because in every case an officer can simply ask the necessary questions to protect *himself* or the

public, and then the prosecution can decline to introduce any incriminating responses at a subsequent trial. . . . But absent actual coercion by the officer, there is no constitutional imperative requiring the exclusion of the evidence that results from police inquiry of this kind; and we do not believe that the doctrinal underpinnings of *Miranda* require us to exclude the evidence, thus penalizing officers for asking the very questions which are the most crucial to their efforts to protect *themselves* and the public." (*New York v. Quarles, supra*, 467 U.S. at p. 658, fn. 7 [81 L.Ed.2d at p. 558], italics added.)

Although one of first impression in this state, the question raised by this case was addressed in *U.S. v. Carrillo* (9th Cir. 1994) 16 F.3d 1046, 1049-1050 (*Carrillo*). There, the defendant had been arrested on drug charges. At the detention facility and before any *Miranda* warnings were given, he was asked whether he had any drugs or needles on his person. Carrillo responded, " 'No, I don't use drugs, I sell them.' " The court upheld the admission of that statement at trial: ". . . Officer Weeks's question stemmed from an objectively reasonable need to protect himself from immediate danger. [Citation.] Officer Weeks testified that he asks this question as a matter of policy before searching a prisoner to avoid contact with syringes and toxic substances. The risk differs from that presented by a gun, but the danger of transmission of disease or contact with harmful substances is real and serious enough; a pressing need for haste is not essential. [Citation.] [¶] Our conclusion is buttressed by the noninvestigatory nature of the officer's question. The question called for a 'yes' or 'no,' . . . . Ordinarily, a question framed in this manner would not elicit any incriminating evidence not produced by the search itself. After Carrillo gave the incriminating but unrequested response, the officer asked no more questions. Although the test is an objective one, the officer's deliberate refusal to pursue the subject heightens our confidence that, in this case, the narrowly tailored question was a reasonable attempt by a police officer to insure his personal safety in the midst of a search." (*Ibid.*, fn. omitted.)

Deputy Howe would have been derelict in his duties had he failed to search defendant before putting him in his patrol car and transporting him to jail. ▮▮ Officers are sometimes required to do dangerous things. They should not, however, be required to do the foolhardy. Sticking a hand in a pocket or squeezing clothing from the outside exposes officers to potentially life-threatening injury if the result is a puncture from a contaminated needle, razor, or other sharp object. Officers should be allowed to make narrow inquiry to avoid such danger. *Carrillo* points out that questions of this nature are not investigatory. (16 F.3d at p. 1049.) The search is going to be conducted. If there is seizable material present, it will, in all likelihood, be

discovered. Allowing a simple and narrow inquiry merely ensures that an officer need not put his safety at risk while engaging in otherwise lawful conduct.

Our holding should be narrowly applied. It presupposes there is legal justification for a search. If justification is lacking, well-articulated Fourth Amendment principles apply and a person's reply to questioning may not be relied upon to justify an otherwise improper intrusion. In addition, inquiry must be narrowly tailored to prevent potential harm. Questions about needles or other potentially contaminated sharp objects would be permissible. General questions like "What's in your pockets?" are overly broad. Allowable questions may only address the presence of items that might be harmful if they were seized without anticipation and particular caution. Questions about drugs in general, most firearms or similar kinds of seizable, but not immediately dangerous, items would fall outside this narrow exception. Finally, improper interrogation may not be engaged in under the guise of ensuring safety. If a suspect acknowledges the presence of a syringe, an officer is not free to inquire about how or when it was acquired or for what purposes without a *Miranda* admonition and waiver.

II., III.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

IV.   <em>Enhancement Under Section 667.5, Subdivision (b)</em>

■ Defendant's 1986 first degree burglary conviction was the serious felony, or "strike," used to bring him under the three strikes sentencing scheme and was also the basis of one of his three prior prison commitments alleged under section 667.5, subdivision (b). Defendant contends this dual use of the same prior conviction was error. We rejected a similar contention in *People* v. *Anderson* (1995) 35 Cal.App.4th 587, 590-591 [41 Cal.Rptr.2d 474] (*Anderson*), holding that a defendant's sentence could be enhanced by five years under section 667, subdivision (a)(1) based upon the same prior conviction used to bring him under the three strikes sentencing scheme.[7] We reject defendant's claim here as well.

In *People* v. *Jones* (1993) 5 Cal.4th 1142, 1152-1153 [22 Cal.Rptr.2d 753, 857 P.2d 1163] (*Jones*), the Supreme Court held that the same prior conviction could not be the basis of a one-year enhancement under section 667.5,

---

*See footnote, *ante*, page 981.

[7]*Anderson* addressed the legislative version of the three strikes scheme (§ 667, subds. (b)-(i)), not the initiative version under which defendant was sentenced. Given the similarity of the two versions on the relevant points, our conclusion here would be the same if defendant had been sentenced under the legislative version.

subdivision (b) and a five-year enhancement under section 667, former subdivision (a) (now subd. (a)(1)). Defendant contends that *Jones* prohibits use of the same prior conviction to double his term under section 1170.12 and to add a year under section 667.5, subdivision (b). It is important, however, to trace the source of the holding in *Jones*.

In *People* v. *Prather* (1990) 50 Cal.3d 428, 440 [267 Cal.Rptr. 605, 787 P.2d 1012] (*Prather*), the Supreme Court determined that the double-the-base-term limitation of section 1170.1, subdivision (g) does not apply to the imposition of enhancements under section 667.5, subdivision (b). Article I, section 28, subdivision (f) of the state Constitution provides, in part: "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding."[8] First, the Supreme Court held, the constitutional provision supersedes the statutory limitation of section 1170.1, subdivision (g); thus, prior felony convictions may be used to enhance a sentence in excess of the double-the-base-term limitation. (*Prather, supra,* at pp. 434-439.) Second, the court held that the section 667.5, subdivision (b) enhancement did, in fact, apply to prior felony convictions. In doing so, it rejected the argument that section 667.5, subdivision (b) was strictly a prior prison term enhancement: "We think it clear that section 667.5(b) is aimed primarily at the underlying felony conviction, and only secondarily, and as an indicium of the felony's seriousness, at the prior prison term. That is, we believe section 667.5(b), fairly read, merely provides a special sentence enhancement for that particular *subset* of 'prior felony convictions' that were deemed serious enough by earlier sentencing courts to warrant actual imprisonment. [Citations.]" (*Prather, supra,* at p. 440, original italics.)

In *Jones,* the court relied upon the *Prather* analysis to conclude that both the section 667, former subdivision (a) enhancement and the section 667.5, subdivision (b) enhancement "apply to the same facts—the prior conviction of a felony . . . ." (*Jones, supra,* 5 Cal.4th at p. 1149.) The court then concluded, as a matter of statutory analysis, that the voters did not intend that the two enhancements would be imposed cumulatively for a single prior conviction. For this conclusion, the court relied on section 667, former subdivision (b), which read: "This section shall not be applied when the punishment imposed under other provisions of law would result in a longer term of imprisonment. There is no requirement of prior incarceration or commitment for this section to apply." (See now § 667, subd. (a)(2).) The court concluded: "In our view, however, the most reasonable reading of

---

[8]Article I, section 28 of the California Constitution and section 667, former subdivision (a) were enacted by the voters on June 8, 1982, as part of Proposition 8.

subdivision (b) of section 667 is that when multiple statutory enhancement provisions are available for the same prior offense, one of which is a section 667 enhancement, the greatest enhancement, but only that one, will apply." (*Jones*, *supra*, 5 Cal.4th at p. 1150.)

The *Jones* court further noted that because many of the serious felonies listed in section 1192.7, subdivision (c)[9] would ordinarily result in prison commitments, the five-year enhancement under section 667 would, in practicality, be a six-year enhancement if the section 667.5, subdivision (b) enhancement were imposed cumulatively. The court concluded such a result was not the intent of the voters. (*Jones*, *supra*, 5 Cal.4th at pp. 1150-1151.)

Defendant relies upon *Jones* to argue that a prior serious felony conviction that results in a prison commitment cannot be used to bring him within the three strikes sentencing scheme and to enhance his sentence by one year. First, as we noted in *Anderson*, the *Jones* court set forth the general rule "that separate enhancements for the same prior conviction cannot be imposed cumulatively unless the enhancement statutes specifically so permit." (*Anderson*, *supra*, 35 Cal.App.4th at p. 594.) However, the three strikes provisions do articulate an alternative sentencing scheme. This new sentencing approach supplants the general penalty provisions and applies to repeat offenders who meet the statutory requirements. This alternative sentencing structure is not an "enhancement" provision. Thus, the holding of *Jones* is not dispositive. (*Anderson*, *supra*, at p. 595.) Based upon the same analysis, we reject defendant's complaint of multiple enhancements.

Second, *Jones* relied upon the limiting language in section 667, former subdivision (b) as evidence that only the greater of two enhancements could be imposed. (5 Cal.4th at pp. 1149-1150.) Neither the three strikes scheme (in either its legislative or initiative form) nor section 667.5, subdivision (b) contains a similar limitation.

Third, defendant gives great weight to the Supreme Court's observation in *Jones* that many of the prior serious felony convictions subject to the five-year enhancement will also be subject to the one-year enhancement. (5 Cal.4th at p. 1150.) Defendant argues that, because the same list of serious felonies (§ 1192.7, subd. (c)) is used to define qualifying convictions under the three strikes scheme, the anomalous results contemplated in *Jones* will occur here if the same prior conviction is used to double the base term and

---

[9]Section 1192.7, subdivision (c) enumerates the serious felonies that are subject to the five-year enhancement under section 667, subdivision (a)(1) and former subdivision (a), and which qualify as "strikes" under both the legislative version of the three strikes scheme (§ 667, subd. (d)(1)) and the initiative version (§ 1170.12, subd. (b)(1)).

impose the one-year enhancement. The court in *Jones* could find no evidence that a six-year enhancement was intended by the voters. By contrast here, the statutory scheme specifically provides for the imposition of all enhancements. Section 1170.12, subdivision (c), which describes the applicable sentences, provides in part: "For purposes of this section, and in addition to any other enhancements or punishment provisions which may apply . . . ." As we held in *Anderson, supra,* on this very point: "Clearly, the language of the provision contemplates the doubling of the term and the imposition of all applicable enhancements." (35 Cal.App.4th at p. 593, fn. omitted.)[10]

Additionally, to prohibit the imposition of the one-year enhancement would be contrary to the broad language of article I, section 28, subdivision (f) of the California Constitution, which requires the use of enhancements without limitation. When the *Jones* court held that section 667, former subdivision (b) superseded the constitutional provision, it relied upon the fact that section 667 was enacted by the same initiative as article I, section 28, subdivision (f). Because *section 667,* former subdivision (b) was a limitation on the use of prior convictions, the voters presumably intended it as an exception to the broader constitutional provision contained in the same initiative. (*Jones, supra,* 5 Cal.4th at pp. 1149-1151.) There is no reason to assume the voters who enacted section 1170.12 intended any exception to article I, section 28, subdivision (f).

Finally, we agree with the Supreme Court's recent statement in *People* v. *Baird* (1995) 12 Cal.4th 126, 133-134 [48 Cal.Rptr.2d 65, 906 P.2d 1220]: "Although *Jones* determined that enhancements under section 667 and section 667.5(b) 'apply to the same facts' for purposes of analyzing section 667 [citation], *Jones* did not suggest that prior convictions and prior prison terms must be viewed as always applying to the same facts regardless of context. Nor did *Jones* disapprove of certain meaningful distinctions that had been judicially drawn between prior convictions and prior prison terms." In *Baird,* the court held the same prior conviction could be used to establish the ex-felon status required for a conviction of possession of a firearm under section 12021 and to enhance the sentence under section 667.5, subdivision (b). Here, defendant's prior serious felony conviction brought him within the three strikes scheme. It would have done so whether or not defendant had been imprisoned for that conviction. The fact of imprisonment is a distinct factor properly supporting an enhancement.

Also in *Anderson,* we concluded that section 654's bar of multiple punishments for the same act or omission was inapplicable to the sentencing

---

[10]*Anderson* involved the same statutory language as it appears in the parallel provision of the legislative version of the three strikes scheme. (§ 667, subd. (e).)

issue presented. (35 Cal.App.4th at pp. 599-600.) We relied upon the analysis of *People* v. *Rodriguez* (1988) 206 Cal.App.3d 517, 519 [253 Cal.Rptr. 633], wherein the court held that the same prior conviction and prison term could be used to elevate a new petty theft conviction to felony status under section 666 and to enhance the ultimate sentence by one year under section 667.5, subdivision (b): " 'Both sections 666 and 667.5 apply to facts, not acts; they relate to the status of the recidivist offender engaging in criminal conduct, not to the conduct itself. We agree with those courts which hold that section 654 does not apply to such enhancements. [Citations.]' " (*Anderson, supra,* at p. 599.) The *Rodriguez* analysis was recently relied upon by the Supreme Court in *People* v. *Coronado* (1995) 12 Cal.4th 145 [48 Cal.Rptr.2d 77, 906 P.2d 1232]. In that case, the court held a prior conviction and prison term for driving under the influence could be used to elevate a new conviction for the same offense to felony status and to enhance that sentence under section 667.5, subdivision (b). In doing so, the court distinguished enhancements related to the status of the offender from those related to the nature of the offense. (*Coronado, supra,* at pp. 156-159.) The former, like those in *Rodriguez* and those in the case before us here, are not subject to section 654 because they do not pertain to acts but rather to a defendant's status.

We conclude that the same prior conviction was properly used to bring defendant under the three strikes scheme and to enhance his sentence by one year under section 667.5, subdivision (b).

### V. *Alleged Equal Protection Violation*

■ Defendant next contends that section 1170.12 as applied to him violates the equal protection guarantees of both the state and federal Constitutions. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.) Specifically, he points out that he is subject to sentencing under the three strikes scheme because he committed a serious felony before a nonserious felony and that if he had committed the same crimes in the reverse order he would not be subject to the more stringent sentencing. He alleges the three strikes scheme, therefore, discriminates against those who commit decreasingly serious felonies, because those who commit increasingly serious felonies are not subject to the law.

Defendant concedes that an equal protection violation lies only where similarly situated parties are treated disparately. (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549].) He claims he is similarly situated to a defendant who commits the same crimes but in reverse order. We do not agree. In enacting section 1170.12, the voters determined

that those defendants who have been convicted of serious or violent felonies merit greater punishment upon conviction of any new felony. (§ 1170.12, subds. (a) & (b).) Such individuals are not similarly situated to those whose initial felony conviction was neither violent nor serious. No equal protection violation has occurred. (*People* v. *Cooper* (1996) 43 Cal.App.4th 815, 828-830 [51 Cal.Rptr.2d 106]; *People* v. *Kilborn* (1996) 41 Cal.App.4th 1325, 1330-1332 [49 Cal.Rptr.2d 152].)

### VI.   *Alleged Failure to Consider All Mitigating Factors\**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### Disposition

The judgment is affirmed.

Phelan, P. J., and Parrilli, J., concurred.

A petition for a rehearing August 13, 1996, and appellant's petition for review by the Supreme Court was denied October 30, 1996.

---

*See footnote, *ante*, page 981.